R. & A. REALTY CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, AND JOHN ROTELLA, TRADING AS BLOOMFIELD SCRAP IRON AND METAL COMPANY, PLAINTIFFS, v. THE PENNSYLVANIA RAILROAD COMPANY, A CORPORATION OF THE STATE OF PENNSYLVANIA, WILSON & ENGLISH CONSTRUCTION COMPANY, A CORPORATION OF THE STATE OF NEW YORK, THE BOARD OF PUBLIC UTILITY COMMISSIONERS OF THE STATE OF NEW JERSEY, J. P. BURNS, HARRY BACHARACH, THOMAS L. HANSON, AND FRANK J. REARDON, DEFENDANTS.

Decided December 2, 1938.

For the Pennsylvania Railroad Company, *John A. Hartpence* and *Thorn Lord.*

For Wilson & English Construction Company, *William G. Hart.*

For the Board of Public Utility Commissioners and Harry Bacharach, Thomas L. Hanson and Frank J. Reardon, individually, *John A. Bernhard.*

For J. P. Burns, *Winne & Banta.*

For the plaintiffs, R. & A. Realty Corporation and John Rotella, *Mario Turtur.*

LEYDEN, S. C. C. Prior to the time hereinafter mentioned, Leesville avenue in the township of Woodbridge, Middlesex county, crossed the Pennsylvania Railroad at grade. A proceeding was instituted by the township of Woodbridge and after notice and hearing the Board of Public Utility Commissioners of the State of New Jersey determined that the crossing was dangerous to the public safety and public travel was impeded thereby. Accordingly the board made an order dated September 6th, 1934, directing the Pennsylvania Railroad to eliminate the crossing by means of an underpass entirely within the street lines. December 1st, 1934, was the date fixed for the commencement and September 1st, 1935, for the completion of the work. The railroad company vainly sought delay. *Pennsylvania Railroad Co.* v. *Board of Public Utility Commissioners,* 13 *N. J. Mis. R.* 768; 180 *Atl. Rep.* 688; *affirmed,* 116 *N. J. L.* 415; 184 *Atl. Rep.* 841. The power and authority of the Board of Public Utility Commissioners to make the determination and order is found in the Fielder Grade Crossing act. *Pamph. L.* 1913. *ch.* 57, *p.* 91; *Cum. Supp. Comp. Stat.* 1924, §§ 167-30 *et seq.; R. S.,* 48:12-61 *et seq.*

Upon the making of the order the Pennsylvania Railroad Company had no choice in the matter. It was compelled to

proceed with the elimination. *Erie Railroad Co.* v. *Board of Public Utility Commissioners,* 89 *N. J. L.* 57; 98 *Atl. Rep.* 13; *affirmed,* 90 *N. J. L.* 672; 103 *Atl. Rep.* 1052; *affirmed,* 254 *U. S.* 394; 65 *L. Ed.* 322. It entered into a contract— the Board of Public Utility Commissioners approving—with the defendant Wilson & English Construction Company for the performance of the work of lowering the grade of Leesville avenue and the construction of the underpass. Wilson & English Construction Company in turn sublet part of the work to the defendant, J. P. Burns.

The plaintiff R. & A. Realty Corporation is the owner of real property abutting Leesville avenue and adjacent to the Pennsylvania Railroad right of way, and the plaintiff John Rotella, trading as Bloomfield Scrap Iron and Metal Co., is the tenant in possession of the land and the owner of the business located thereon.

The complaint consists of forty-nine pages and is divided into twenty counts, ten in behalf of the plaintiff R. & A. Realty Corporation and ten in behalf of John Rotella. By it they seek to recover damages allegedly sustained by them to their respective interests by reason of the construction by the defendant railroad within the roadway on Leesville avenue of the underpass and approaches thereto. It is alleged that the construction has caused the plaintiffs' property and business to become permanently depreciated in value and has caused other damages as set forth in the complaint. The first ten counts correspond somewhat to, the second ten, for example, counts 1 and 11 seek recovery of damages from the defendant Pennsylvania Railroad Company upon what is alleged to be common law principles of liability. Counts 2 and 12 seek the recovery of damages against the Pennsylvania Railroad Company by reason of the violation of the plaintiffs' constitutional rights. Count 3 and 13 seek the recovery of damages from the defendant Pennsylvania Railroad Company, upon the theory that such recovery is authorized by the Fielder act. Counts 4 and 14 seek the recovery of fifty per cent. of the damages from the defendant, Pennsylvania Railroad Company, upon the theory that such a recovery is

authorized by the said statute. Counts 5 and 15 seek the recovery of damages from the defendant Board of Public Utility Commissioners upon the theory that the recovery is authorized by the said statute. Counts 6 and 16 seek the recovery of damages from the defendants, Harry Bacharach, Thomas L. Hanson and Frank J. Reardon, individually, on the ground that their action as members of the Board of Public Utility Commissioners was *ultra vires* and illegal. Counts 7 and 17 seek the recovery of damages against the Pennsylvania Railroad Company on the theory of a common law trespass. Counts 8 and 18 seek the recovery of damages against the defendant Wilson & English Construction Company upon the same theory, and likewise counts 9 and 19 seek the recovery of damages against the defendant J. P. Burns, and counts 10 and 20 seek damages against the defendant Wilson & English Construction Company upon alleged common law principles of liability.

The defendants move to strike the counts of the complaint relating to them respectively. The motion in behalf of the Pennsylvania Railroad Company is made upon the following grounds:

1. That the several respective counts of the complaint do not set forth or state a legal cause of action against the Pennsylvania Railroad Company.

2. That the complaint is sham.

3. Is frivolous.

4. Is vague and uncertain.

5. Is so framed as to embarrass a fair trial.

6. It appears from the complaint itself that the defendant was acting as an arm of the state and not liable to suit.

The defendant the Board of Public Utility Commissioners and the individual commissioners move to dismiss the complaint upon the following grounds:

1. That it does not set forth a legal cause of action against either the board or the individual members of the commission.

2. That the Board of Public Utility Commissioners is an agency of the state and its representative for the purpose and within the limitations expressed within the act of 1911 and

the supplements and amendments thereto, and as such agency is not a proper defendant.

3. The state without its consent cannot be sued, and since there is no allegation of such consent, the suit cannot be maintained.

4. The public utility commissioners as individuals constituted the Board of Public Utility Commissioners on the date of the order directing the elimination and are therefore not personally liable in a civil action for damages arising out of their acts as such commissioners.

5. That the order of the board directing the elimination was an order issued in the performance of a duty of a public character.

The defendant Wilson & English Construction Company moves to dismiss upon the ground:

1. That it on the dates alleged acted in a contractual relationship with the Pennsylvania Railroad Company in compliance with a mandatory order made by the Board of Public Utility Commissioners, an agency of the state, which order required the Pennsylvania Railroad Company to eliminate the crossing, and that it was acting for an agency of the state under the authority of a lawful court order.

2. That it is an improper party and under no liability to the plaintiffs because the legislature provided an exclusive remedy for damages sustained by directing that such damages should be paid by the railroad company involved and the Board of Utility Commissioners.

3. That the eighth count of the complaint is duplicitous in that it alleges in one count two causes of action, i. e., trespass *quare clausum fregit* and trespass on the case.

4. That the eighteenth count fails to comply with the requirements of certainty and the defendant is not reasonably appraised of that which is complained of.

The defendant J. P. Burns moves to dismiss upon substantially the same grounds as those urged in behalf of the Wilson & English Construction Company.

In passing, it might not be amiss to observe that no part of the plaintiffs' property has been actually taken and the

change in grade of Leesville avenue is wholly within the highway lines; that the location and level of the railroad has not been changed; that nothing has been added to the railroad's structure nor done for a railroad purpose. The highway has been changed. Its grade, wholly within its lines, has been depressed for a certain distance in order to carry it underneath the railroad tracks, leaving a portion of the plaintiff's property on an elevation. All that the Pennsylvania Railroad did was to enter into an agreement with an independent contractor, to wit, Wilson & English Construction Company in obedience to the state's mandatory order for the performance of the work of changing the grade of the highway for the benefit of its users and for the safety of the public. There is no allegation of negligence in the performance of the work.

The gravamen of the complaint is that the construction of the underpass and the consequent depression of the grade of Leesville avenue left a portion of the plaintiffs' property on an elevation and deprived it of the ingress and egress from Leesville avenue it formerly enjoyed; took away its valuable frontage and as a result has permanently rendered the property less valuable for the purposes for which it is best adapted.

It is appropriate to note at this point that as a result of a proceeding brought by the present plaintiffs in the Court of Chancery against the Pennsylvania Railroad Company and the Board of Public Utility Commissioners, the defendants conveyed or caused to be conveyed to the plaintiff the R. & A. Realty Corporation a triangular tract of land adjacent to the westerly side of its property to serve as a means of access, practically at grade, to and from Leesville avenue. The conveyance was made without cost to the plaintiff and it accepted it and is using the property so conveyed, without prejudice, however, to any action at law which it might desire to bring.

There is no allegation in the complaint that the grade of Leesville avenue was legally established before the work of elimination was undertaken.

It is settled that the owner of land abutting on a highway has no vested right to recover damages for a change of grade

of the highway in the absence of a statute giving that right, and this is so even though the general effect of the change of grade is to impair or substantially destroy access to the landowner's property. It is not a taking of property in the legal sense. It is *damnum absque injuria. Clark* v. *Elizabeth,* 61 *N. J. L.* 565; 40 *Atl. Rep.* 616; *Willets Manufacturing Co.* v. *Freeholders,* 62 *N. J. L.* 95; 40 *Atl. Rep.* 782; *Sommer* v. *State Highway Commission,* 106 *N. J. L.* 26; *Burns Holding Corp.* v. *State Highway Commission,* 8 *N. J. Mis. R.* 452; *affirmed,* 108 *N. J. L.* 401; *Cooper* v. *State Highway Commission,* 6 *N. J. Mis. R.* 723; 150 *Atl. Rep.* 768; *Hulett* v. *Sea Girt,* 108 *N. J. Eq.* 309; 154 *Atl. Rep.* 741. But the plaintiffs insist section 2 of the Fielder act as amended, *supra,* gives them the right of action pleaded.

Section 1 thereof gave the board power to order any company operating a railroad in this state to eliminate grade crossings by either reconstructing the railroad over or under the highway or by vacating, relocating or changing the lines, width, direction or location of the highway, or the opening of a new highway. Sections 2, 3 and 4 of the original act related to the manner in which the expense of such changes was to be borne. Section 5 created a procedure by which the municipalities of the state, the railroads or the Board of Public Utility Commissioners might set in operation an application for the alteration of a grade crossing, and section 6 related to the powers previously granted to the board.

Section 2 provides as follows: The entire expense of such alterations, changes, relocation or opening, including damages to adjacent property, shall be paid by such railroad, unless a street railway uses such crossing, in which event the board may order not exceeding ten per centum of such expense directly chargeable to the crossing used by the street railway company, to be paid by the company operating such street railway, and the balance to be paid by the company operating such railroad."

Section 2 was amended in 1930, *Pamph. L.* 1930, *ch.* 101, *p.* 348, to read: "The entire expense of such alterations, changes, relocation or opening, including damages to adjacent

property and the cost of removing, relaying or relocating any municipal water or sewer pipes or other municipal pipes, conduits, or subways, shall be paid fifty per centum by such railroad company, or companies involved and fifty per centum by said board (Board of Public Utility Commissioners) out of funds to be provided for that purpose."

Section 2 of the act was again amended in 1933 (*Pamph. L.* 1933, *ch.* 390, *p.* 1092; *R. S.* 48:12-62), so that in its present form as set forth in the Revised Statutes it provides: "The railroad company or companies involved, and the board out of funds to be provided for that purpose, shall each pay fifty per cent. of the entire expense of such alterations, changes, relocation or opening, including damages to adjacent property and the cost of removing, relaying or relocating any municipal pipes, conduits or subways; provided, that if funds are granted or allotted by the United States government or any of its agencies, the board may, with the consent and approval of the governor, allot and credit any or all of the funds so received toward the part of the expense to be borne by such railroad company or companies."

Reliance is placed upon the phrase "including damages to adjacent property" in that section.

At the time of the passage of the Fielder act in 1913 there was a statute in force authorizing the recovery of damages arising from the alterations of the grade of any street or highway. It provided: "An action doth and shall lie in behalf of any person or corporation owning any house or other building standing and erected upon any street or highway, the grade whereof shall be or shall have been altered by virtue of the ordinance, resolution, or other proceeding of the legislative authority of any city, borough, town corporate, village, or other municipality in this state, to recover from such city, borough, town corporate, village, or other municipality all damages which such owner or owners shall suffer by reason of altering any such grade; provided, that no such action shall be brought after the expiration of twelve months from the working of any such grade." *Pamph. L.* 1858, *p.* 415; section 70 of the Road act; 4 *Comp. Stat., p.* 4461. Hence

the phrase "including damages to adjacent property" was incorporated in section 2 of the Fielder act. However, this statute permitting the recovery of damages in such cases was repealed in 1918 (*Pamph. L.* 1918, *p.* 659), so that when section 2 of the Fielder act was amended in 1930 (chapter 101) and 1933 (chapter 390), no right of action existed either at the common law or by statute for damages arising out of the change of the grade of a street or highway; *Sommer* v. *State Highway Commission, supra.* The Fielder act, as amended, did not nor was it intended to create a cause of action in adjacent landowners for damages occasioned by the changed grade of a street or highway. Such an object was not expressed in its original title: "A supplement to an act entitled 'An act concerning public utilities; to create a Board of Public Utility Commissioners and to prescribe its duties and powers;' approved April 21st, 1911." The intent was not to impose a liability to pay damages where none existed but merely to provide a method of ascertaining and paying damages for such taking of private property as under existing law entitled the owner to compensation. *Willis* v. *Winona,* 60 *N. W. Rep.* 814; 25 *L. R. A.* 142. There was no necessity upon the part of the legislature to create such a cause of action for the statute of 1858 as amended, *supra,* granting that right. was then in full force and effect. Such a right, in derogation of the common law, must be created by an express statute to that effect. It will not be inferred or implied by judicial construction. The sole purpose of section 2 was to apportion the cost of the grade crossing elimination among the various parties concerned therein.

What has been said with relation to the claim against the Pennsylvania Railroad applies with equal force to that against the Board of Public Utility Commissioners. Consent or permission to sue the state will not be spelled out by mere inference or legal construction.

In the performance of its statutory powers and duties the Board of Public Utility Commissioners of the State of New Jersey is an *alter ego* of the state and as such cannot be sued as a separate entity or body. The state cannot be sued in its

own courts without its consent, and if the legislature had intended that the state should be subject to suit it would have said so in plain and explicit language. *Strobel Steel, &c., Co.* v. *State Highway Commission,* 120 *N. J. L.* 298; 198 *Atl. Rep.* 774; *DeSantis et al.* v. *Delaware, Lackawanna and Western Railroad Co. et al.,* 11 *N. J. Mis. R.* 22; 165 *Atl. Rep.* 119.

By their complaint the plaintiffs would place the burden of determining the constitutionality of an act of the legislature upon the individual members constituting the Board of Public Utility Commissioners at their peril. It is urged that the action of the board in making an application to the United States government for a grant to aid in the cost of the construction of the elimination was illegal and *ultra vires,* and that the 1933 amendment to section 2 of the Fielder act is unconstitutional, in violation of article 4, section 6, paragraphs 1, 2 and 3 of the New Jersey Constitution providing that all bills for raising revenue shall originate in the house of assembly; that no money shall be drawn from the treasury but for appropriations made by law, and the credit of the state shall not be directly or indirectly loaned in any case; and therefore the defendants Harry Bacharach, Thomas L. Hanson and Frank J. Reardon, individually, acted without sufficient authority in law and subjected themselves to individual liability.

There is no merit in this contention. The individual commissioners acted in concert in the performance of a public, statutory duty. There is no allegation in the complaint that the commissioners were actuated by motives of private gain, oppression or bad faith. Members of a public board, acting in the performance of a public duty and under a public statute, are not personally liable in a civil action for damages arising out of their acts, provided what they do is done in good faith. *Valentine* v. *City of Englewood Board of Health,* 76 *N. J. L.* 509; *Johnson* v. *Marsh,* 82 *Id.* 4; 85 *Atl. Rep.* 761. The determination of the constitutionality of an act is a purely judicial function residing in the courts. The making of the order by the board was a matter which was at least

colorably within its jurisdiction. *Grove* v. *Van Duyn,* 44 *N. J. L.* 654. If the rule were otherwise, the public business of the state would be shackled, for public officers would be loath to perform their duties.

The seventh, eighth, ninth, seventeenth, eighteenth and nineteenth counts of the complaint are similar. The seventh count is typical of the others. The allegations thereof are substantially that beginning on or about the first day of March, 1937, and on divers other days and times to the commencement of the action, the defendant Pennsylvania Railroad Company by its servants, agents and employes, with force and arms, broke and entered the particularly described close of the plaintiff R. & A. Realty Corporation, and then and there put, placed and erected divers structures, barriers, fences and walls in and upon said close and kept and continued such structures, barriers, fences and walls without the leave and against the will of the plaintiff for a long space of time, thereby hindering and preventing the plaintiff from having the full use, benefit and enjoyment thereof. The allegation of resulting damage is that the plaintiff has thus been deprived of valuable frontage and access to and from the premises by way of Leesville avenue, whereby the land has been greatly depreciated in value. If the allegations are true, there has been a direct physical invasion of the land of the plaintiff and the count sets forth a good cause of action for trespass *quare clausum fregit.* The question of damages can and undoubtedly will be controlled by the court at the trial.

The result is that the motions to strike counts 1, 2, 3, 4, 5, 6, 10, 11, 12, 13, 14, 15, 16 and 20 will be granted, and the motions to strike counts 7, 8, 9, 17, 18 and 19 will be denied.

Appropriate orders may be submitted accordingly.