### COBB et al. v. CITY OF MALDEN et al.

Civ. A. No. 52–49.

United States District Court
D. Massachusetts.

April 28, 1952.

John D. O'Reilly, Jr., Boston, Mass., for plaintiffs.

Bernard Kaplan, City Sol., Malden, Mass. for defendants.

SWEENEY, Chief Judge.

This is a class action brought by certain teachers in the public schools of Malden for themselves and others of their class against the City of Malden and most of its public officials. It seeks a declaratory judgment defining the rights of the school teachers and seeks money damages and an order for recovery of an alleged pay loss. The action is allegedly grounded on the United States Constitution, Article 1, Section 10, the Fourteenth Amendment thereto and 8 U.S.C.A. §§ 43 and 47. The defendants deny that the plaintiffs have a right to maintain this suit and deny that there has been any injury to them.

Under Massachusetts law the cities and towns are required to maintain public schools; the School Committee has general charge of the schools and school property, and has the power to elect and contract with teachers; each city and town is required to provide an amount of money sufficient for the support of the schools, and teachers employed at the discretion of the School Committee are immune from salary reduction except by a general salary revision affecting all teachers of the same salary grade. See General Laws, c. 71, § 1 et seq.

In Hayes v. City of Brockton, 313 Mass. 641, 48 N.E.2d 683, the Court held that since ultimate power to establish salaries for teachers in public schools is vested in the School Committee under General Laws, chapter 71, it is the duty of city officers framing the budget to provide for salaries of teachers as voted by the School Committee. See also Watt v. Town of Chelmsford, Mass., 104 N.E.2d 419.

In December, 1950 the School Committee of Malden adopted resolutions by which it established the compensation of the members of the class of persons on whose behalf this action is brought, at annual salaries in accordance with the salary schedules which provided for the classification of teachers upon the basis of duties, educational background, in-service study and teaching experience, and which also provided for periodic increases of salary. This action apparently met with the displeasure of the Mayor and members of the City Council, and a referendum petition was filed under Chapter 29 of the Acts of 1950, which for all intents and purposes was a new provision to allow the review of the actions of the School Committees by the taxpayers under the conditions outlined in that Chapter. A sufficient number of signatures was acquired and a special election was held on May 8, 1951 for the purpose of voting on the resolution as adopted by the School Committee. At that election, and to the question "Shall that part of the vote of the School Committee taken on December 29, 1950 requesting the City to appropriate $1,260,084.00 for 'Instruction-Personal Service' * * * be approved?" there were 5,924 people who voted to approve the action of the School Committee and 7,402 who voted not to approve it.

The petitioners claim that the action of the Legislature in adopting Chapter 29 of the Acts of 1950 and the action of the city officials in failing to provide the money that was voted by the School Committee have impaired the obligations of the plaintiffs' contracts and have deprived them of property without due process of law and have denied them equal protection of the law.

■ I do not see any substance to any of these contentions. If we start off with the proposition that these teachers had a contract with the city by the mere resolution of the School Committee, then we could find some basis for alleging that their contracts had been impaired by the later action of the city, but as I see it all that happened was that the School Committee attempted to give an increase to the teachers which the city had a lawful right to overrule. In Gorman v. City of Peabody, 312 Mass. 560, 45 NE.2d 939, it was held that the vote of a School Committee to increase the salary of each teacher then employed was a "measure" subject to the referendum provisions of the city charter. Previous to the enactment of Chap. 29 of the Acts of 1950 the Commonwealth saw fit to constitute the Malden School Committee the sole agent to contract with the teachers. That practice was somewhat qualified with the passage of legislation entitled "An Act Providing for the Initiative and Referendum for the City of Malden." Chap. 29 of Acts of 1950. From then on both the School Committee and in certain exceptional cases the people at large in Malden were given the authority to set the compensation and terms of employment for school teachers in the Malden Schools. As was stated by the Court in the Gorman case, supra, 312 Mass. at page 569, 45 N.E. 2d at page 944, "Members of the school committee, when elected, become public officers charged with important statutory duties. They derive their power in the first instance from the electorate, and, if the Legislature, in its wisdom, sees fit to provide a reasonable and proper check upon the exercise of their statutory duties, such provisions must be upheld."

■ Surely plaintiffs cannot contend that it was part of the obligation of their contracts that the School Committee alone must continue to set the terms of their employment as long as they are employed by the City of Malden. Such a contention would greatly limit the power of the state to provide as it best sees fit for the welfare of thousands of school children.

■ All that happened here, it seems to me, is that the School Committee voted to increase the salaries of the teachers at a time when there was already a statute on the books saying that the School Committee has not the sole authority in every case to say what school teachers shall receive as pay, but that under certain circumstances before their compensation shall be ultimately fixed the registered voters may have the final say on this issue. If by referendum the people sought affirmatively to reduce the pay of the school teachers under Chap. 29 then perhaps there might be a violation of Chap. 71, § 43, with a consequent impairment of the contracts of plaintiffs. But the court is not called upon to decide this issue, as that is not the case here. It is my conclusion that Chap. 29 of the Acts of 1950 did not impair the contracts of plaintiffs in the facts of this case.

■ The question of deprivation of property without due process of law will now be considered. Valid contracts are property and as such cannot be interfered with without due process of law, Dodge v. Board of Education of City of Chicago, 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57, and this rule applies whether the obligee be a private individual, municipality, state, or the United States, Deutsche Bank und Disconto-Gesellschaft v. Cummings, 65 App.D.C. 297, 83 F.2d 554. However, it seems that a given contract must become fixed and binding on the parties before any property rights vest in relation to it. Did the rights of the present plaintiffs to this salary increase under their contracts vest before the alleged illegal action was taken by defendants in this case? In my opinion they did not. It is true that plaintiffs had valid subsisting contracts at the time of the passage of Chap. 29. But some of the terms of these contracts were subject to revision from time to time, such as the amount of compensation plaintiffs were to receive. Before the salary increases involved here were voted by the School Committee, Chap. 29 had been passed and that ordinance in effect provided that no school teacher should be absolutely entitled to a pay raise voted by the School Committee if it was later nullified by a special vote of the people at large. For all purposes

and effects a new term had been inserted in the employment contracts which said that the School Committee no longer had the final say in every case as to how much pay the teachers should receive. Plaintiffs could not be deprived of property to which they had no absolute claim.

■ All of the plaintiffs' contentions must fall, because it appears factually that they did not have an absolute unconditional property right in the salary increase voted by the School Committee. This necessarily follows as a result of our finding that Chapter 29 of the Acts of 1950 is not unconstitutional. Whether the special election was conducted properly or not is not for this Court to decide. I assume that if there were misrepresentations or fraud attendant upon this special election such a matter could be rectified by the Commonwealth without interference from this Court.

■ From the foregoing I conclude and find that the complaint fails to state a claim upon which relief can be granted by this Court. The action is to be dismissed.