**COBB et al. v. CITY OF MALDEN et al.**

No. 4655.

United States Court of Appeals
First Circuit.

March 13, 1953.

702

John D. O'Reilly, Jr., Boston, Mass., for appellants.

Bernard Kaplan, Malden, Mass., for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Massachusetts, entered on April 29, 1952, dismissing a class action which complained that plaintiffs, public school teachers in the City of Malden, Massachusetts, had been subjected to deprivation of their constitutional rights by the conspiratorial action of defendants. 105 F.Supp. 109. The defendants are the city of Malden, its mayor, and certain members of its Board of Aldermen and Common Council.

The complaint alleges that the teachers have contracts calling for the payment of specific salaries for the year 1951 and that the defendants, acting under color of law, prevented the appropriation of municipal funds sufficient to pay such salaries in full. The law under which defendants acted was an amendment to the city charter which provided in part that the final passage of any measure by the school committee could be nullified by the majority of registered voters voting at an election held pursuant to a referendum petition brought by at least twelve per cent of the total registered voters of the city. Mass. Acts of 1950, c. 29, § 1, amending Mass. Acts of 1881, c. 169, § 24.

At a special election on May 8, 1951, a majority voted not to approve a requested appropriation of the school committee. The complaint further alleges that defendants' conduct in effecting this rejection deprived plaintiffs of rights accruing to them under the Constitution of the United States, namely, immunity from (1) impairment of contract, (2) deprivation of property without due process of law, and (3) denial of the equal protection of the laws.

The prayers of the complaint are for a declaratory decree, assessment of damages and injunctive relief.

The court below dismissed for failure to state a claim for relief on the ground that no contract had been alleged upon which to base a complaint.

Plaintiffs allege federal jurisdiction under Title 28 U.S.C. §§ 1343 and 2201. Since § 2201 merely creates a new remedy for cases otherwise within the jurisdiction of the Federal Courts, Aetna Life Ins. Co. v. Haworth, 1937, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, Skelly Oil Co. v. Phillips Petroleum Co., 1950, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194, the essential jurisdictional ground is § 1343. By this section, the district courts are given original jurisdiction of any civil action authorized by law, to redress deprivations of civil rights under color of state authority. Such deprivations have been made actionable by the Civil Rights Act, R.S. §§ 1979, 1980, 8 U.S. C.A. §§ 43, 47(3).

At the outset, it should be noted that plaintiffs' claim for damages rests upon two distinct federal civil actions. One action is for subjecting or causing to subject the plaintiffs to deprivation of constitutional or legal rights, R.S. § 1979, 8 U.S.C.A. § 43, see Bomar v. Keyes, 2 Cir., 1947, 162 F.2d 136. The other action is for any act in furtherance of a conspiracy, R.S. § 1980, 8 U.S.C.A. § 47(3), "* * * to alter, impair or deny equality of rights under the law, * * *." Collins v. Hardyman, 1951, 341 U.S. 651, 662, 71 S.Ct. 937, 942, 95 L. Ed. 1253.

The complaint alleges that the application of a referendum provision, Mass. Acts of 1950, c. 29, § 1, amending Mass. Acts of 1881, c. 169, impaired contracts between the Malden public school teachers and the City of Malden and that defendants mayor, aldermen, and councilmen, conspired to effect this application.

The issue on this appeal is whether or not dismissal was warranted on any one of three grounds: (1) that there is no jurisdiction; (2) that the complaint fails to state a claim upon which relief can be granted, and (3) that there is a fatal nonjoinder of indispensable parties. Since this is a federal cause of action, the first and second grounds for dismissal present similar questions.

We shall first consider this complaint as against defendant City of Malden. There appears to be no basis for a claim for damages against said defendant. The plaintiffs assume the City's responsibility for the conspiracy and consequent deprivation of constitutional rights effected by the municipal officials. In Picking v. Pennsylvania R. Co., 3 Cir., 1945, 151 F.2d 240, 249, the court said:

"* * * As we read R.S. § 1979 in the light of the Screws decision we are compelled to the conclusion that Congress gave a right of action sounding in tort to every individual whose federal rights were trespassed upon by any officer acting under pretense of state law. A field was created upon which a state officer could not tread without being guilty of trespass and liable in damages. The concept is clear enough but the boundaries of the forbidden territory are ill-defined. * * *"

Appellants have not even attempted to argue that the City of Malden is liable for the alleged tortious acts of its public officers in the conduct of its schools. The law in Massachusetts is contrary, see Hill v. City of Boston, 1887, 122 Mass. 344; Bolster v. City of Lawrence, 1917, 225 Mass. 387, 114 N.E. 722; McGovern v. City of Boston, 1918, 229 Mass. 394, 118 N.E. 667 and we are not aware of any cases arising under the Civil Rights Act which have so held.

Federal jurisdiction has been upheld in an action against a city and some of its officials, seeking an injunction and damages, but this point on the city's responsibility was not adverted to. Burt v. City of New York, 2 Cir., 1946, 156 F.2d 791. Since the complaint which is before us sets forth a statutory cause of action created by Congress, the limits of liability must be governed by federal law. In the absence of any clear authority on this point, we are of the opinion that the Massachusetts law in this regard properly defines the limits of liability which Congress intended.

We are not warranted in reading into the language and purpose of the Civil Rights Act the right of action alleged against the municipality in this case. Charlton v. City of Hialeah, 5 Cir., 1951, 188 F.2d 421; Hewitt v. City of Jacksonville, 5 Cir., 1951, 188 F.2d 423. At least with regard to the operation of its school system, we think that a municipality is not liable for the conduct of its officials who flout the Constitution.

Even if the City of Malden were held liable for the wrongs of its officials, a federal court should deny injunctive relief in the proper exercise of its discretion. See Stainback v. Mo Hock Ke Lok Po, 1949, 336 U.S. 368, 69 S.Ct. 606, 93 L.Ed. 741; Burford v. Sun Oil Co., 1943, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424. In this respect, the federal cause of action against the city is reduced to a consideration of whether or not this case presents a situation calling for the equitable relief which rests in the sound discretion of the court.

704

With regard to the propriety of a federal decree against a municipality, it must first be observed that we are dealing with a most important phase of municipal conduct or state action.

■ The Commonwealth of Massachusetts has enacted several statutory provisions designed to insure the integrity of its public school system. Mass.Gen.Laws, c. 71. Also, concern for the financial stability of its cities and towns has prompted some regulation of municipal budgets and appropriations. Mass.Gen.Laws, c. 44, §§ 32, 33. In recognition and effectuation of these statutes, the Supreme Judicial Court of Massachusetts has held that the statutory remedy for failure to appropriate sufficient funds to support the public schools is exclusive. Mass.Gen.Laws, c. 71, § 34. Callahan v. City of Woburn, 1940, 306 Mass. 265, 28 N.E.2d 9; O'Brien v. City of Pittsfield, 1944, 316 Mass. 283, 55 N.E.2d 440. This remedy provides for action against the recalcitrant municipality, upon petition initiated by ten or more taxable inhabitants of the city or town or by certain officials. The result is that although Massachusetts law recognizes that public school teachers have binding contracts, Donlan v. City of Boston, 1916, 223 Mass. 285, 111 N.E. 718; Decatur v. Auditor of City of Peabody, 1925, 251 Mass. 82, 146 N.E. 360, the sole method of enforcement of these contract obligations in cases like the present is by statutory action. Callahan v. City of Woburn, supra.

The federal courts have been reluctant to exercise concurrent jurisdiction in the enforcement of rights arising under state laws, in cases involving application of uncertain state law, Railroad Comm'n of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 and complex state policy, Railroad Commission of Texas v. Rowan & Nichols Oil Co., 1940, 310 U.S. 573, 60 S.Ct. 1021, 84 L.Ed. 1368. In Meredith v. City of Winter Haven, 1943, 320 U.S. 228, 236, 64 S.Ct. 7, 12, 88 L.Ed. 9, the Supreme Court has explained the many instances in which equitable relief has been denied where it said: " * * * In thus declining to exercise their jurisdiction to enforce rights arising under state laws, federal courts are following the same principles which traditionally have moved them, because of like considerations of policy, to refuse to give an extraordinary remedy for the protection of federal rights. * * *"

■ In the instant case, we are confronted with a situation where the enforcement of the federal cause of action against defendant City of Malden clearly contravenes the state policy reflected in the provision of an exclusive remedy for deficiency in appropriations for the public schools. Such enforcement seems neither necessary nor proper in this case. Although a state remedy cannot operate to deprive a federal court of jurisdiction, see Thompson v. Gibbes, D.C., 1945, 60 F.Supp. 872, it may persuade a federal court to decline to exercise jurisdiction. A federal court of equity "may in the public interest, even withhold relief altogether, and it would seem that it is bound to stay its hand in the public interest when it reasonably appears that private right will not suffer." Securities & Exchange Comm'n v. U. S. Realty & Improvement Co., 1940, 310 U.S. 434, 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1293. Furthermore, it may, in its discretion, refuse "to give a remedy which would work a public injury or embarrassment". United States ex rel. Greathouse v. Dern, 1933, 289 U.S. 352, 360, 53 S.Ct. 614, 617, 77 L.Ed. 1250. Since plaintiffs have apparently not even attempted to utilize the available state remedy, and since their injuries may be adequately compensated by recovery in their action against the other named defendants, it is proper for a court to decline to exercise its jurisdiction. At any rate, since the city could not be held liable for the alleged wrongs committed by its officials in this case, the dismissal by the lower court was proper as to defendant City of Malden.

The equitable considerations mentioned above pertain with equal force to defendants mayor, aldermen and councilmen. Equitable relief should be denied because any federal coercion with regard to the deficient municipal appropriations for the public schools would be an unwarranted interference with state policy. However, with regard to legal remedy, plaintiffs' claim for damages against these individual

defendants, resting upon tort theory, under a wrong created by federal law, is an entirely different matter.

It is alleged that these defendants, in furtherance of a conspiracy, deprived plaintiffs of their constitutional rights by employing state law to abrogate plaintiffs' contract obligations. This is a federal wrong and presents a case within federal jurisdiction under 28 U.S.C. § 1343.

Whether or not plaintiffs have alleged a cause of action, which was the ground for dismissal in the court below, depends on a determination that the complaint does or does not state valid and subsisting contract obligations which were impaired by state law. It seems clear that the constitutionality of the application of the referendum provision, Mass. Acts of 1950, c. 29, § 1, amending Mass. Acts of 1881, c. 169, is drawn into question if such application operated to deprive plaintiffs of compensation to which they were entitled under their contract of employment with the city. The complaint alleges that the public school teachers of Malden were entitled to annual increases in pay under salary schedules contracted in 1947. The referendum provision, supra, which was enacted in 1950, and applied in 1951, allegedly nullified the annual increases previously agreed upon.

In defining the terms of a contract existing between public school teachers and a municipality, the Supreme Judicial Court of Massachusetts in Callahan v. City of Woburn, 1940, 306 Mass. 265, 270, 28 N.E.2d 9, 13, said:

"* * * The rules and regulations of the school committee provide for minimum and maximum salaries for teachers with annual increases, and it could have been found that all teachers were familiar with the rules in this respect.

"* * * In the circumstances, we think that it follows from the employment of the teachers who were serving at discretion, from the compensation paid them in previous years, and from the step-up increases for which the rules of the committee provide that they were all under contract. * * *"

Thus, if in this case, the salary schedules of 1947 provided for annual increases, it would seem that those increases were valid and subsisting obligations which could not constitutionally be impaired by state law. This is the substance of the allegations in the complaint, and the plaintiffs were entitled to a hearing on the merits of such allegations in order to determine whether or not there exists a cause of action against the defendants for subjecting plaintiffs to deprivation of rights secured to them by the Constitution.

The federal policy of refraining from any unnecessary decision on a question of constitutional law, see Railroad Comm'n of Texas v. Pullman Co., supra, and Spector Motor Service, Inc. v. McLaughlin, 1944, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101, is inapplicable to this action for a wrong created by federal law. As the Supreme Court said in another connection, in Propper v. Clark, 1949, 337 U.S. 472, 492, 69 S.Ct. 1333, 1344, 93 L.Ed. 1480: "The submission of special issues is a useful device in judicial administration in such circumstances as existed in the Magnolia, Spector, Fieldcrest and Pullman cases, supra, but in the absence of special circumstances, [Meredith v. City of Winter Haven] 320 U.S. at pages 236, 237, 64 S.Ct. [7] at pages 11, 12, 88 L.Ed. 9, it is not to be used to impede the normal course of action where federal courts have been granted jurisdiction of the controversy."

Therefore, we are of the opinion that plaintiffs did state a cause of action within the jurisdiction of the federal courts as to the mayor, aldermen, and councilmen of the City of Malden.

We have considered the defendants' objection that the complaint failed to join indispensable parties and we can find no merit in this contention on the record presented in this appeal.

Judgment affirmed as to defendant City of Malden, and reversed as to other defendants, and case remanded.

MAGRUDER, Chief Judge (concurring).

I concur in the opinion of the court to the effect that we should affirm the judg-

ment below in so far as it dismissed the complaint against the City of Malden. Also I acquiesce, somewhat reluctantly, in the conclusion that the judgment should be reversed, so far as it dismissed the complaint, in its tort aspect, against the individual defendants. But I think it deserves to be emphasized how unlikely it is that the plaintiffs will be able to recover judgment, upon trial of the case against the individual defendants, in view of what the plaintiffs will have to prove in order to make out a cause of action in tort.

This is not the first time that a court has been perplexed by the apparently sweeping and unqualified language of the old Civil Rights Act. 8 U.S.C.A. § 43 seems to say that every person in official position, whether executive, legislative, or judicial, who under color of state law subjects or causes to be subjected any person to the deprivation of any rights secured by the Constitution of the United States, shall be liable in damages to the person injured. The enactment in terms contains no recognition of possible defenses, by way of privilege, even where the defendants may have acted in good faith, in compliance with what they believed to be their official duty. Reading the language of the Act in its broadest sweep, it would seem to make no difference that the conduct of the defendants might not have been tortious at common law; for the Act, if read literally, creates a new federal tort, where all that has to be proved is that the defendants as a result of their conduct under color of state law have in fact caused harm to the plaintiff by depriving him of rights, etc., secured by the Constitution of the United States.

Fortunately, Tenney v. Brandhove, 1951, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019, has relieved us of the necessity of giving the Civil Rights Act such an awesome and unqualified interpretation. In that case the defendants were members of a legislative committee of the California legislature. They were sued for damages upon allegations that their acts in the course of conducting the proceedings of a legislative fact-finding committee on un-American activities had resulted in subjecting the plaintiffs to the deprivation of various rights and privileges secured by the Constitution of the United States. It was held that the complaint should be dismissed; that the broadly expressed terms of the Civil Rights Act were not intended to deprive state legislators of their pre-existing and well-established immunity from civil liability for acts done within the sphere of legislative activity. Further, the Court said that even the claim of an unworthy purpose does not destroy the privilege. "The privilege would be of little value if they [the legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives." 341 U.S. at page 377, 71 S.Ct. at page 788.

So far as concerns federal tort liability for acts done under color of state law, I think the Supreme Court in effect has held, in Tenney v. Brandhove, that the Act merely expresses a prima facie liability, leaving to the courts to work out, from case to case, the defenses by way of official privilege which might be appropriate to the particular case.

In the case at bar the defendant members of the city council were exercising legislative functions, on a subordinate level. But it seems that, as respects members of similar subordinate legislative bodies, there has not been such a general and unquestioned recognition at the common law of an absolute immunity from civil liability for acts done by such persons in their official capacity, comparable to the complete immunity accorded to members of state legislatures. Certainly so far as concerns the torts of libel and slander, members of a municipal council and similar subordinate legislative bodies do not have an absolute immunity from liability for defamation in the course of the performance of their legislative functions. They have only a qualified privilege, which may be forfeited if the defamation is not in good faith or published for an improper purpose. See Am.L.Inst., Rest. of Torts § 590, and Comment c; Prosser on Torts 828–29 (1941), and cases cited. I know of no reason why their immunity from liability for harms other than defamation should be any wider.

Hence I take it as a roughly accurate generalization that members of a city council, and other public officers not in the exceptional category of officers having complete immunity, would have a qualified privilege, giving them a defense against civil liability, for harms caused by acts done by them in good faith in performance of their official duty as they understood it. See R. & A. Realty Corp. v. Pennsylvania R. R. Co., 1938, 3 A.2d 293, 16 N.J.Misc. 537; Tillotson v. Fair, 1945, 160 Kan. 81, 159 P.2d 471. But on ordinary principles of the law of torts, I think that members of a city council would be liable in damages for pecuniary harm to a plaintiff intentionally inflicted by action, under color of official authority, which the defendants subjectively realized would result in depriving the plaintiff of a right or privilege secured by the Constitution of the United States. Cf. Keene Lumber Co. v. Leventhal, 1 Cir., 1948, 165 F.2d 815. The privilege by way of defense to the prima facie federal tort defined in 8 U.S.C.A. § 43 should certainly be no broader than the privilege that would be accorded under the common law.

It follows that when this case goes back for retrial of the tort action against the individual defendants, the plaintiffs will not be able to recover unless they establish that the defendants, when they took the actions complained of, under color of the referendum provision of C. 29, § 1, Mass. Acts of 1950, realized that they were subjecting plaintiffs to harm by an unconstitutional impairment of the obligation of their contracts with the City. It may be, indeed, that the present complaint has not alleged with sufficient particularity this crucial state of mind on the part of the defendants; but in this respect I have resolved doubts in favor of the plaintiffs, under the rule that allegations of a complaint should be read liberally and indulgently, upon a motion to dismiss. I don't suppose for a moment that plaintiffs will be able to establish what it is necessary for them to show in order to recover damages. Cf. Burt v. City of New York, 2 Cir., 1946, 156 F.2d 791, 793. For that reason perhaps the case will never come to trial. There is ample procedure under state law by which plaintiffs' substantive rights under their alleged contracts may be vindicated in the state courts. I cannot escape the feeling that this case does not belong in the federal courts.

WOODBURY, Circuit Judge (dissenting).

I agree with my associates in affirming the judgment of the District Court insofar as it dismisses the complaint against the City. Furthermore, I agree with Chief Judge MAGRUDER in everything except the liberality and indulgence with which he reads the allegations of the complaint.

We are not confronted here with allegations which read together indicate a deliberate and calculated course of conduct on the part of the individual defendants having the obvious effect and undertaken for the obvious purpose of depriving the plaintiffs of rights guaranteed to them by federal law. Cf. McCoy v. Providence Journal Co., 1 Cir., 1951, 190 F.2d 760. Instead all that appears in the complaint is that the individual defendants acted "in concert and conspiracy" with one another in submitting the item in the school committee's estimate of expenditures for 1951 for "Instruction—Personal Services" to the voters at a special election called under Chapter 29 of the Acts of 1950, and furthermore, without statement of particulars, that "in furtherance" of their "conspiracy" they "falsely and grossly misrepresented and misstated the amounts of money called for by the school committee's estimate" in phrasing the referendum question submitted to the voters. These allegations impress me as mere conclusions of the pleader comparable to the "opprobrious epithets 'willful' and 'malicious'" which the Supreme Court in Snowden v. Hughes, 1944, 321 U.S. 1, 10, 64 S.Ct. 397, 88 L.Ed. 497 felt justified in treating as without legal significance on motion to dismiss. Hence I think we can with propriety do likewise here without departing from the rule that on motions to dismiss allegations should be read with liberality and indulgence to the pleader. Thus I would read the complaint as lacking any well pleaded allegations of unworthy

purpose on the part of the individual defendants, and so reading it I would affirm the judgment ordering it dismissed for the reason advanced by Chief Judge MAGRUDER.