SAFEGUARD MUTUAL INSURANCE COMPANY

v.

Robert A. MILLER et al.

C. M. CLARK INSURANCE AGENCY, INC.

v.

Robert A. MILLER et al.

Civ. A. Nos. 71-767, 71-822.

United States District Court, E. D. Pennsylvania.

Sept. 10, 1971.

Malcolm H. Waldron, Jr., Philadelphia, Pa., for plaintiffs.

J. Shane Creamer, Atty. Gen., J. Justin Blewit, Asst. Atty. Gen., Com. of Pa., for defendants Miller, Kuntz, Cowley, Trulli, Antoun and Wenrich.

## OPINION AND ORDER

JOHN W. LORD, Jr., Chief Judge.

Safeguard Mutual Insurance Company and C. M. Clark Insurance Agency, Inc., have filed separate suits against the above-named defendants,[1] all of whom

1. Each plaintiff also named former Insurance Commissioners Reed and Maxwell as defendants. In a Memorandum and Order dated July 21, 1971, the Court granted those defendants' motion to dismiss.

were at the relevant times discussed, infra, attorneys or employees of the Insurance Department of Pennsylvania. The above-captioned cases are but two of several suits between the plaintiffs and the Insurance Department. The first suits were actions by the plaintiffs to have Section 502, 40 P.S. § 202 (Supp. 1971) declared unconstitutional by a three-judge court. (Civil Action Nos. 42510 and 42502). While a three-judge court was convened, the panel stayed all proceedings in the Federal court pending the decision of the Dauphin County (Pennsylvania) Court, to which the Insurance Commissioner had applied for the appointment of a statutory liquidator.

While the state action was pending, Safeguard applied to the three-judge panel to dissolve the stay order. The Dauphin County Court then rendered a decision in favor of the plaintiffs on the factual issues. Safeguard, however, alleging continuing misconduct on the part of the Insurance Department, moved a fifth and sixth time to dissolve the stay. The panel denied these motions and subsequently dismissed the actions as moot. (See Order dated August 3, 1971).

Prior to the dismissal, Safeguard filed another suit, Civil Action No. 70–1969, in which they again sought the impaneling of a three-judge court, alleging continuing malicious and arbitrary acts on the part of the Insurance Department, and asked the court to declare the Insurance laws of Pennsylvania unconstitutional.

In an opinion and order dated July 15, 1971, we denied plaintiff's request for a three-judge court, but held that the action should proceed as a regular one before a single district court judge.

Independent of all of the above-mentioned cases, plaintiffs filed the present suits, alleging in their complaint that the defendants "entered into a conspiracy * * * at some time prior to April 12, 1967 which has as one of its purposes the deprivation of one or more of the plaintiff's constitutionally protected rights. * * * ", in violation of the Civil Rights Act. 42 U.S.C.A. § 1981 et seq. Plaintiff Safeguard alleges that the act of suspending it in April of 1967 and the subsequent petition for liquidation, inter alia, were done in furtherance of this conspiracy, as were the acts, inter alia, of seizing all of C. M. Clark's books, records and property, as well as harassing the office by stationing examiners on the premises for three to four months.

Presently before the Court is a motion to dismiss on behalf of all of the defendants in each suit. Inasmuch as they raise common issues of law, the Court will decide the motions in both suits at this time.

Defendants' motions to dismiss are made pursuant to Rule 12(b) (6), Fed. R.Civ.P., failure to state a claim upon which relief can be granted, and 12(b) (3), Fed.R.Civ.P., improper venue.

In support of their motions to dismiss under 12(b) (6), defendants assert that as attorneys, officials and employees of the Insurance Department of Pennsylvania, involved in judgmental and evaluative decision making, they are cloaked with governmental and/or quasi-judicial immunity.

■■ While the sweeping language of § 1983 makes "every person" potentially liable for violations of the Act, it has been determined that Congress, in enacting the law, did not intend to abolish all common law immunities. It is clear that traditional common law immunities such as the legislative and judicial protections survived the statute, and are viable defenses in an action brought under the Civil Rights Act. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L. Ed.2d 288 (1967); Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L. Ed. 1019 (1951); Bauers v. Heisel, 361 F.2d 581 (3rd Cir. 1966), cert. denied 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967); Hoffman v. Halden, 268 F. 2d 280 (9th Cir. 1959). The availability of the doctrine of governmental immunity has not been the subject of as much judgmental decision making as have the

judicial and legislative immunities. However, it would appear clear that public officials are not entitled to the absolute immunity which has been given legislators and judges, or those acting in a quasi-judicial position. To so hold would "practically constitute a judicial repeal of the Civil Rights Act." Hoffman v. Halden, *supra* at 300. There is not a determinative Supreme Court decision, and the courts which have addressed themselves to the issue of governmental immunity as a defense to an action under the Civil Rights Act have not agreed on the standard to be applied in cases where there is no absolute immunity.

Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, cert. denied 305 U.S. 642, 643, 59 S.Ct. 146, 83 L.Ed. 414, rehearing denied 305 U.S. 673, 59 S.Ct. 242, 83 L.Ed. 436 (1938), was an action brought against federal officers for allegedly procuring the indictment of plaintiff falsely and without probable cause. Plaintiff was acquitted and sued. The court concluded that since the acts of the defendants "were performed in the discharge of their official duties, the motives with which those duties were performed are immaterial * * *." *Id.* at 142.

This was extended to Civil Rights cases in Hoffman v. Halden, *supra*, which also found a public official cloaked with immunity for discretionary acts performed in the scope of his authority.

In Erlich v. Glasner, 274 F.Supp. 11 (C.D.Cal.1967), the court took the position that "to hold that the [public official involved] or anyone in a similar position is required to establish his good faith in a court after his activity was within his discretionary duties would lead to endless harassment and ultimate frustration in carrying out his duties." *Id.* at 14.

■ It is not denied that the named defendants participated in the decision making process which eventually resulted in the suspension of Safeguard and the application for the appointment of the statutory liquidator. Nor is it disputed that the defendants were responsible for C. M. Clark's books and records being subpoenaed. Safeguard, after examination, was suspended because the Department felt that if the company continued to write insurance, its policyholders and the public would be injured. This Court finds that these acts, and the exercise of discretion which prompted them to be taken, are exactly the kind of discretionary conduct which must be taken by public officials, unfettered by the fear of harassing or retributory lawsuits. They are acts, therefore, within the ambit of governmental immunity.

We find also that there is no question but that the defendants acted within the scope of their authority. Section 502 of the Insurance Department Act of 1921, as amended, 40 P.S. § 202 (Supp.1970) gives the Insurance Commissioner the authority, if certain conditions are found to exist, to suspend an insurance company and, after approval by the Attorney General of the Commonwealth, to apply for the appointment of a statutory liquidator. Section 202 states in relevant part:

> "Whenever any domestic insurance company * * * is found, after an examination, to be in such condition that its further transaction of business will be hazardous to its policyholders, or to its creditors, or to the public * * * the Insurance Commissioner, after examination, shall suspend the entire business of any such domestic insurance company * * *."

To find that the defendants here are not entitled to governmental immunity would mean that their every future application of the statutes they are required to enforce would have to be tempered by the fear that a disgruntled subject of such discipline would be able to avenge himself on them by a later lawsuit. We cannot subject governmental officers discharging their statutory duty to such potentially crippling treatment.

Although we feel that we have already set forth sufficient reasons for recogniz-

ing the immunity here, we think it advisable to discuss the limited aspect of governmental immunity. Because it is not a blanket protection for those acting under it, as are the legislative and judicial exemptions from the Civil Rights Act, it may be argued that those seeking to claim the protection of governmental immunity should act in good faith, for without this limitation the protection *will* become a total one for every state officer, enforcing every statute, no matter how malicious his intent.

While we have above noted the absence of a definitive statement on the question of the extent of governmental immunity, the Supreme Court, in Pierson v. Ray, *supra*, specifically held that the defense of good faith and probable cause was available in an action under Section 1983 to police officers who had arrested the petitioners, acting under a statute which was subsequently held to be unconstitutional, but which the officers had probable cause to believe to be valid. 386 U.S. at 555–557, 87 S.Ct. 1213. The Court thus made it clear that state officers, although not entitled to an absolute and unqualified immunity have at least a limited immunity for acts done by them in good faith within the scope of their official duties..

In *Pierson*, the Supreme Court seems to have adopted the thinking enunciated more than a decade earlier by the late Chief Judge Magruder, in his landmark opinions in Francis v. Lyman, 216 F.2d 583 (1st Cir. 1954) and Cobb v. City of Malden, 202 F.2d 701 (1st Cir. 1953). In *Cobb*, schoolteachers sought redress for their allegedly illegal discharge by the defendant city, its mayor and council members. Concurring in that case, Judge Magruder noted:

" * * * the Act merely expresses a prima facie liability, leaving to the courts to work out, from case to case, the defenses by way of official privilege which might be appropriate to

the particular case." Cobb v. City of Malden, *supra* at 706.

He then concluded:

" * * * Hence I take it as a roughly accurate generalization that * * * officers not in the exceptional category of officers having complete immunity, would have a qualified privilege, giving them a defense against civil liability, for harms caused by acts done by them in good faith in performance of their official duty as they understood it. *Id.* at 707.

The test set up by Judge Magruder was characterized prior to the Pierson v. Ray Court as "likely to control the law of the future." 3 Davis, Administrative Law Treatise, § 26.06 at 541 (1958).[2]

While we are not obligated to apply this more stringent test of good faith, even if we were to do so, the same result would ensue. Judge Swope, writing for the Dauphin County Court in the earlier state action, found that, "We are satisfied, however, that the Commissioner's action in suspending Safeguard on April 12, 1967 was a prudent one, embarked upon only after a careful examination of such information as was available to him at that time and in the reasonable belief that such action was mandatory upon him in light of Section 502 of the Statute." 91 Dauphin County Reports 305 (1969).

Voluntarily encumbering ourselves with the necessity of finding fairness, we are not prepared to contradict the findings of the state court which listened to the case in full and found the actions of the Commissioner to have been in good faith.

■ Courts have long relied upon several traditional arguments in support of finding immunity proper. Citing Note, 66 Harv.L.Rev. 1285, 1295, n. 54 (1953), this Circuit, in Bauers v. Heisel, *supra*, listed them as "(1) the danger of influencing public officials by threat of a law suit; (2) the deterrent effect of

2. *See also*, Jaffe, Suits Against Governments and Officers: Damage Actions, 77 Harv.L.Rev. 209, 221–222 (1963).

potential liability on men who are considering entering public life; (3) the drain on the valuable time of the official caused by insubstantial suits; (4) the unfairness of subjecting officials to liability for the acts of their subordinates; (5) the theory that the official owes a duty to the public and not to the individual; (6) the feeling that the ballot and the formal removal proceeding are more appropriate ways to enforce honesty and efficiency of public officers."

While a discussion of a majority of these reasons is implicit within our opinion, we feel that point five alone presents a strong case for further, although brief, discussion.

In recognizing the need of the officer involved to seek first to protect the rights of the public before concerning himself with the particular rights of the individual [corporation], we note that the insurance industry is one of the most heavily regulated private concerns in the American economy. Its workings affect every aspect of American life, both within the home and in the context of the market place. The myriad and complex economic and administrative reasons which prompt severe action, such as suspension, are guided by a far-reaching statutory scheme, set up primarily for the protection of the public, and entrusted to the Insurance Department of the Commonwealth. We will not now place ourselves in a position of administrative review of acts done in the performance of statutory duty by particular state officers specifically charged with the performance of that duty by the legislature.

In summary, there is a substantial body of opinion recognizing that governmental officers may be found immune for their discretionary acts. Even if we were to impose upon those officers the duty of making effective that limited immunity by a showing of good faith, we feel that our reliance on the findings of the Dauphin County Court make that showing an effective one. Finally, in view of the stringent controls imposed upon the insurance industry, and the insistence of the legislature that this Department, and its members, enforce those controls, we are unprepared to impose liability.

In view of the foregoing, it is not necessary to discuss the question of improper venue.