**Richard A. WESTBERRY et al.,**
**Plaintiffs,**

v.

**Dean FISHER, M.D., individually and in his capacity as Commissioner of the Maine State Department of Health and Welfare; Pauline Smith, individually and in her capacity as Director of the Division of Family Services of the Maine State Department of Health and Welfare; James Tierney, individually and in his capacity as District Director of the Division of Family Services, Portland Branch; David Jenny and Beverly Holloway, social workers of the Maine State Department of Health and Welfare, their agents, successors, and employees and all those in concert, Defendants.**

**Civ. No. 10–80.**

United States District Court
D. Maine, S. D.
Jan. 12, 1970.

Donald F. Fontaine, Robert E. Mittel, Thomas P. Downing, Portland, Me., William L. Robinson, New York City, Peter A. Anderson, James P. Dunleavy, Pine Tree Legal Assistance, Inc., Presque Isle, Me., A. MacNichol, South Portland, Me., Ward T. Hanscom, Sanford, Me., for plaintiffs.

Ruth L. Crowley, Janice M. Lynch, Keith N. Edgerly, Asst. Attys. Gen., Augusta, Me., for defendants.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This is a class action under 42 U.S.C. § 1983 (1964) [1] against the Commission-

---

1. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and

er and certain administrative personnel of the Maine State Department of Health and Welfare seeking a declaratory judgment, injunctive relief and damages. Federal jurisdiction was properly invoked under 28 U.S.C. § 1343 (3) and (4) (1964).[2] A Three-Judge District Court was convened as required by 28 U.S.C. § 2281 (1964). That Court held in an opinion dated March 21, 1969, Westberry v. Fisher, 297 F.Supp. 1109 (D.Me.1969), that Maine's so-called "maximum grant" and "maximum budget" regulations, which provided, in substance, that under no circumstances could a family entitled to benefits under the State's Aid to Families with Dependent Children Program (AFDC) have a "budgeted need" of more than $300 per month, or receive a grant from the State in excess of $250 per month, violated the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. Accordingly, on April 14, 1969 judgment was entered declaring the challenged regulations unconstitutional and void, and enjoining defendants from their further enforcement. Thereafter, with the agreement of the parties, the Three-Judge Court was dissolved, and the matter was remanded to the single judge to whom the complaint was originally presented for a determination of plaintiffs' damage

claims. *See* Public Service Commission of Missouri v. Brashear Freight Lines, 312 U.S. 621, 625, 61 S.Ct. 784, 85 L.Ed. 1083 (1941); Davis v. County School Board, 142 F.Supp. 616 (E.D.Va.1956); Mechling Barge Lines v. United States, 368 U.S. 324, 331, 336, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961) (dissenting opinion). The present proceeding is confined to the issues thus presented.

Plaintiffs are members of a class composed of ADFC recipients who have large families and whose grants were limited by one or both of the two regulations. The class is now closed and constitutes, including the original plaintiffs, some 53 claimants who have intervened on behalf of themselves and their minor children.[3] They now seek to recover damages in the following three categories:

(1) Retroactive AFDC benefits withheld during the period from the date of the filing of the complaint on April 18, 1968 until the Department began making corrected payments in the spring of 1969.[4] The total amount of the benefits so withheld has been stipulated to be $45,903.

(2) Support monies collected by the Department pursuant to Maine Public Assistance Payments Manual, ch. III, § A, at 1–2 (Rev. 7/1/68). These

---

laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983 (1964).

2. The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

  \*    \*    \*    \*    \*

  (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

  (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote. 28 U.S.C. § 1343(3) and (4) (1964).

3. On July 30, 1969 the Court ordered that in accordance with the provisions of Fed.R.Civ.P. 23(d), notice be given by publication to the members of the class represented by the original plaintiffs that they might, prior to September 2, 1969, intervene in the present action and present their claims for damages as a result of the application of the regulations to them. That date was subsequently extended to September 15, 1969. By agreement of the parties, the damage claims to be considered by the Court are limited to the claims of the named plaintiffs and members of the class who have intervened to date.

4. As of April 21, 1969 the Department of Health and Welfare corrected the payments due to all members of the affected class.

monies were collected from persons legally obligated to support mothers with dependent children and were applied against the maximum budget allowable to any family. The total amount of support monies thus withheld has been stipulated to be $2,752.

(3) Consequential damages for pecuniary and other losses sustained as a result of the application to plaintiffs of the challenged regulations. These include out-of-pocket expenditures for medical attention and health insurance payments necessitated by the denial of State Medicaid coverage, and lost wages claimed to be the result of the maximum budget regulation. The total amount of these damages has been stipulated to be $1,958.28.

For the purposes of this litigation, the parties have stipulated that the $250 maximum grant regulation invalidated in this case was first promulgated in 1950 by David H. Stevens, then Commissioner of the Maine Department of Health and Welfare; that defendant Fisher became Commissioner of the Department in 1954; that the $300 maximum budget regulation was first promulgated in 1956 by defendant Fisher; and that prior to their being put into effect, both regulations were submitted to the United States Department of Health, Education and Welfare and approved by its duly authorized representatives, although neither regulation was submitted to the Maine Attorney General for approval as to legality.

Plaintiffs' principal contention is that they are entitled under 42 U.S.C. § 1983 to recover of the defendants, both in their individual and in their representative capacities, all damages sustained by them resulting from application of the unconstitutional regulations. Alternatively, plaintiffs claim that this Court should order the retroactive payment of the benefits illegally withheld from them on the authority of the so-called "Fair Hearing" regulations which were issued by the United States Department of Health, Education and Welfare and adopted by the Maine State Department of Health and Welfare during the pendency of this action.[5] For the reasons which follow, the Court has concluded that neither Section 1983 nor the "Fair Hearing" regulations support an award of damages to plaintiffs in this action.

I

Plaintiffs seek first to hold defendants personally liable for damages under Section 1983. Because the record in this case is devoid of any indication that defendants acted other than in good faith and within the scope of their authority, no personal liability can attach to them.

Section 1983 makes liable "every person" who under color of state law deprives another person of his civil rights. That it imposes liability on state officials for acts done, either *within* or *without* the scope of their authority, was definitely established by Monroe v. Pape, 365 U.S. 167, 171–187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Furthermore, Section 1983 is cast in terms so broad as to indicate that governmental immunity can never be a defense in suits brought under that section.[6] Nevertheless, de-

5. *See* Federal Handbook of Public Assistance Administration, §§ 6100, 6200, 6500 (eff. July 1, 1968); U. S. Dept. of Health, Education and Welfare State Letter No. 10480, Sept. 30, 1968 (eff. July 1, 1968); Maine Public Assistance Payments Manual, ch. I, § C (Rev. 7/1/68).

6. As Judge Magruder observed in his frequently-cited concurring opinion in Cobb v. City of Malden, 202 F.2d 701, 705 (1st Cir. 1953), the literal language of the statute,

* * * seems to say that every person in official position, whether executive, legislative, or judicial, who under color of state law subjects or causes to be subjected any person to the deprivation of any rights secured by the Constitution of the United States, shall be liable in damages to the person injured. The enactment in terms contains no recognition of possible defenses, by way of privilege, even where the defendants may have acted in good faith, in compliance with what they be-

spite the broad sweep of the statutory language, it has now been authoritatively determined that it was not the intention of Congress in enacting Section 1983 "to abolish wholesale all common-law immunities." Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). Thus, the Supreme Court has held that Section 1983 did not abrogate the immunity of legislators for acts within their legislative role, Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), or the immunity of judges for acts in discharge of their judicial functions, Pierson v. Ray, *supra* 386 U.S. at 553–555, 87 S.Ct. 1213. And the lower federal courts have extended this immunity to a wide variety of judicial and quasi-judicial officers, including clerks of court, justices of the peace, prosecuting attorneys, and sometimes even governors, jailers, and parole board members. *See, e. g.*, Sullivan v. Kelleher, 405 F.2d 486 (1st Cir. 1968); Brown v. Dunne, 409 F.2d 341 (7th Cir. 1969); Fanale v. Sheehy, 385 F.2d 866 (2d Cir. 1967); Rhodes v. Meyer, 334 F.2d 709 (8th Cir.), cert. denied 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 186 (1964); Kenney v. Fox, 232 F.2d 288 (6th Cir.), cert. denied 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956); Delaney v. Shobe, 235 F.Supp. 662 (D.Or.1964).

The Supreme Court has not definitively spoken on the applicability of the doctrine of governmental immunity in actions brought under Section 1983 against state administrative officials, such as the defendants in this case. Plainly, such officials are not entitled to the absolute immunity which has been accorded to legislators and judges, for "to hold all state officers immune from suit would very largely frustrate the salutary purpose of this provision." Jobson v. Henne, *supra* 355 F.2d at 133; Hoffman v. Halden, 268 F.2d 280, 300 (9th Cir. 1959). However, in addition to reaffirming the common-law immunity of judges, the Court in Pierson v. Ray specifically held that the defense of good

faith and probable cause was available in an action under Section 1983 to police officers who had arrested the petitioners, acting under a statute which was subsequently held to be unconstitutional, but which the officers had probable cause to believe to be valid. 386 U.S. at 555–557, 87 S.Ct. 1213. The Court thus made it clear that state officers, although not entitled to an absolute and unqualified immunity, have at least a limited immunity for acts done by them in good faith within the scope of their official duties.

In *Pierson*, the Supreme Court appears to have adopted the test enunciated more than ten years previously by Judge Magruder in his landmark opinions in Cobb v. City of Malden, *supra*, and Francis v. Lyman, 216 F.2d 583 (1st Cir. 1954). Cobb v. City of Malden was a civil rights action by school teachers who claimed to have been wrongfully discharged against the City of Malden, its mayor, and members of its city council. In his concurring opinion in that case, Judge Magruder stated that:

> * * * the Act merely expresses a prima facie liability, leaving to the courts to work out, from case to case, the defenses by way of official privilege which might be appropriate to the particular case. 202 F.2d at 706.

He then concluded:

> Hence I take it as a roughly accurate generalization that members of a city council, and other public officers not in the exceptional category of officers having complete immunity, would have a qualified privilege, giving them a defense against civil liability, for harms caused by acts done by them in good faith in performance of their official duty as they understood it. *Id.* at 707.

A year later, writing for the court in Francis v. Lyman, which affirmed the dismissal of a complaint under Section 1983 against the superintendents of two state penal institutions, Judge Magru-

---

lieve to be their official duty. *Id.* at 706.

*See also:* Jobson v. Henne, 355 F.2d 129, 133 (2d Cir. 1966).

der said that "we think it no longer appropriate" to "give effect to the statute in its literal wording," 216 F.2d at 587; instead, it is the duty of the court to,

> \* \* \* fit the statute as harmoniously as may be into the familiar and generally accepted legal background, and to confine its application, within reason, to those situations which might possibly have had the approval of the Congress if it had specifically adverted to the particular cases, bearing in mind the basic purposes which gave rise to the legislation in the first place. *Id.*

Continuing, he further stated:

> Where the act has been invoked in situations which no doubt were a major concern of the Reconstruction Congress—for instance, (in cases involving race discrimination) \* \* \* it is no defense to the state officials that they may have acted, not maliciously, but in the good-faith belief that they were performing their official duty under what they thought was valid state legislation. They are said to act at their peril \* \* \*. But beyond such situations, it seems to be the tendency of the decisions to restrict the applications of the Civil Rights Act so as to avoid the appalling inflammation of delicate state-federal relationships which undoubtedly would ensue. *Id.* at 588.

Other courts, both before and subsequent to *Pierson*, have enunciated similar tests. *See, e. g.*, Silver v. Dickson, 403 F.2d 642 (9th Cir. 1968), cert. denied 394 U.S. 990, 89 S.Ct. 1477, 22 L.Ed.2d 765 (1969); Franklin v. Meredith, 386 F.2d 958, 960–961 (10th Cir. 1967); Hoffman v. Halden, 268 F.2d 280, 298–300 (9th Cir. 1959). *Cf.* Barr v. Matteo, 360 U.S. 564, 573, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). As one distinguished commentator has observed, the approach adopted by Judge Magruder "seems likely to control the law of the future." 3 Davis, Administrative Law Treatise, § 26.06 at 541 (1958). *See* Jaffe, Suits Against Governments and Officers: Damage Actions, 77 Harv. L.Rev. 209, 221–222 (1963); Note, The Doctrine of Official Immunity under the Civil Rights Act, 68 Harv.L.Rev. 1229, 1238–1240 (1955); Note, The Proper Scope of the Civil Rights Act, 66 Harv. L.Rev. 1285, 1295–1299 (1953). In the absence of contrary authority, it is accepted as controlling in this case.

It is not necessary in the present case to fix the limits of the immunity to which state officials may be entitled in actions under Section 1983, for it is clear that under the foregoing standard the present defendants should not be denied governmental immunity. The record is utterly devoid of any proof of abuse of discretionary authority, malice or ill-will on the part of any of these defendants. It has been stipulated that defendant Fisher acted within the scope of his authority in promulgating the maximum budget regulation and in enforcing the maximum grant regulation promulgated by his predecessor. Furthermore, he was acting within the rule-making power conferred upon him by law. 22 M.R.S.A. § 3741 (1964), as amended (Supp. 1968–69); *see* 42 U.S.C. §§ 601–602 (1969). The contested regulations had been approved by the United States Department of Health, Education and Welfare, and tacit approval of the regulations appears to have been given by the State of Maine. While *high* state officials may be expected to be reasonable men, they neither can nor should be expected to be seers in the crystal ball of constitutional doctrine. They are not "charged with predicting the future course of constitutional law." Pierson v. Ray, *supra,* 386 U.S. at 557, 87 S.Ct. at 1219. So far as the defendant lower-echelon officials of the Health and Welfare Department are concerned, it is apparent that the choice before them was to enforce a long-standing and apparently valid system of regulations or to disobey them and risk disciplinary action by their superiors. Like the policemen in *Pierson*, their lot is "not so unhappy that (they) must choose between being

charged with dereliction of duty if (they do not enforce the regulations), and being mulcted in damages if (they do)." *Id.* 386 U.S. at 555, 87 S.Ct. at 1218. And again the record is conspicuously silent as to any evidence of malice or ill-will shown by any of these defendants.

Being satisfied that the acts of which plaintiffs complain were done by defendants "in good faith in performance of their official duty as they understood it," the Court holds that under the circumstances of this case defendants are not personally liable for damages under Section 1983.

## II

■ Plaintiffs seek next to hold defendants liable for damages under Section 1983 in their official capacities as officers of the State of Maine. In this aspect, they concede that the purpose of their suit is to obtain a judgment which will establish a liability of the State and will be payable out of the public funds of the State. It is clear that such a suit is in actuality one against the State, even though the State is not named as a defendant. Kennecott Copper Corp. v. State Tax Commission, 327 U.S. 573, 576–577, 66 S.Ct. 745, 90 L.Ed. 862 (1946); Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 463–464, 65 S.Ct. 347, 89 L.Ed. 389 (1945); Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 51, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); In re State of New York, 256 U.S. 490, 500–503, 41 S.Ct. 588, 65 L.Ed. 1057 (1921); Smith v. Reeves, 178 U.S. 436, 438–440, 20 S.Ct. 919, 44 L.Ed. 1140 (1900); In re Ayers, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216 (1887); O'Neill v. Early, 208 F.2d 286 (4th Cir. 1953); King v. McGinnis, 289 F.Supp. 466 (S.D.N.Y.

1968); *cf.* Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).[7] As such, there are two reasons why the suit must fail for want of jurisdiction.

■ In the first place, suits under Section 1983 may be maintained only against a "person" who under color of state law deprives another of his civil rights. Monroe v. Pape, *supra*, 365 U.S. at 187–192, 81 S.Ct. 473, established that a municipal corporation is not a "person" subject to suit under the Act.[8] It is equally clear that a state is not a "person" within the meaning of the Act. Whitner v. Davis, 410 F.2d 24, 29 (9th Cir. 1969); Williford v. California, 352 F.2d 474, 476 (9th Cir. 1965); King v. McGinnis, *supra* 289 F.Supp. at 468; United States ex rel. Gittlemacker v. Pennsylvania, 281 F.Supp. 175, 178 (E.D. Pa.1968).

In the second place, the State of Maine is entitled to the protection of the Eleventh Amendment to the Constitution of the United States, which provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

■■ Although the Eleventh Amendment in terms inhibits only federal court suits against a state by citizens of another state, it has long been established that a state is equally immune from federal court suits brought by its own citizens. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); Fitts v. McGhee, 172 U.S. 516, 524–525, 19 S.Ct. 269, 43 L.Ed. 535 (1899); Duhne v. New Jersey, 251 U.S. 311, 313, 40 S.Ct. 154, 64 L.Ed. 280 (1920); Great Northern Life Ins. Co. v. Read, *supra*, 322 U.S. at

---

7. As was said in Minnesota v. Hitchcock, 185 U.S. 373, 387, 22 S.Ct. 650, 656, 46 L.Ed. 954 (1902),

    * * * whether a suit is one against a State is to be determined, not by the fact of the party named as defendant on the record, but by the result of

the judgment or decree which may be entered * * *.

8. In Cobb v. City of Malden, *supra* 202 F.2d at 703, the Court of Appeals for this Circuit had previously arrived at the same conclusion.

51, 64 S.Ct. 873.[9] While a state may waive its immunity, *see, e. g.*, Parden v. Terminal Railway of the Alabama State Docks Department, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); Petty v. Tennessee-Missouri Bridge Commission, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959), there is nothing to indicate that the State of Maine has done so insofar as actions such as the present one are concerned.

Plaintiffs argue strenuously that the line of cases beginning with Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908), provides the basis for the recovery of damages against the State in this case, despite the bar of the Eleventh Amendment. Concededly, it has been settled law since *Ex parte Young* that suits against state officials to enjoin them from unconstitutional action are not forbidden by the Eleventh Amendment. Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 228, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964); Georgia Railroad & Banking Co. v. Redwine, 342 U.S. 299, 303–306, 72 S.Ct. 321, 96 L.Ed. 335 (1952). In such cases, the officer is deemed to be stripped of his official capacity and to be acting individually. Davis, Suing the Government by Falsely Pretending To Sue An

Officer, 29 U.Chi.L.Rev. 435, 437 (1962).[10] To date, however, the Supreme Court has not seen fit to extend the doctrine of *Ex parte Young* to permit the recovery of monetary damages. In those cases in which the recovery of money from the state's treasury has been sought, the Court has consistently adhered to the rule that a state cannot be sued in a federal court without its consent. Kennecott Copper Corp. v. State Tax Commission, *supra*; Ford Motor Co. v. Department of Treasury of Indiana, *supra*; Great Northern Life Insurance Co. v. Read, *supra*; In re State of New York, *supra*; Smith v. Reeves, *supra*. *See* Whitner v. Davis, *supra*; DeLevay v. Richmond County School Board, 284 F.2d 340 (4th Cir. 1960); O'Neill v. Early, 208 F.2d 286 (4th Cir. 1953).[11]

A recent case much urged upon the Court by plaintiffs is Board of Trustees of Arkansas A & M College v. Davis, 396 F.2d 730 (8th Cir.), cert. denied 393 U.S. 962, 89 S.Ct. 401, 21 L.Ed.2d 375 (1968). That case, however, appears to be more persuasive of the position urged by defendants than of that sought by plaintiffs. Plaintiff in that case had brought suit under Section 1983 against the president and board of trustees of a state college for alleged wrongful discharge

---

9. There has been considerable debate over what the Supreme Court meant to say in the crucial Hans decision. It is unclear whether the basis of that decision was a judicial extension of the Eleventh Amendment, or traditional common-law concepts of sovereign immunity. Subsequent decisions, however, have tended to base state immunity from suits by its own citizens in federal courts on the Eleventh Amendment, thus apparently elevating what might have been a judicial doctrine to the status of a constitutional mandate. *See generally* Comment, Private Suits Against States in the Federal Courts, 33 U.Chi.L.Rev. 331, 334–335 (1966).

10. In discussing the Young decision, Professor Davis has stated:

    \* \* \* [The Court] was deliberately indulging in fiction in order to find a way around sovereign immunity. It knew that the injunction against the attorney general was in truth a means of preventing the state from enforcing

the statute. The reality is all too obvious that the suit was in practical effect a suit against the state. 3 Davis, Administrative Law Treatise § 27.03 at 553 (1958).

11. It is perhaps worthy of note that in Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), the appellant States argued not only that the coverage of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. could not be extended to state employees, but that the remedial provisions of the Act, to the extent they authorized civil suits for back pay and damages, if applied to the states, would conflict with the Eleventh Amendment. Noting that the remedial provisions of the Act were severable and that the Eleventh Amendment issue was not squarely presented, the Court reserved the question of a state's sovereign immunity from suit under the Act for an appropriate future case. 392 U.S. at 200, 88 S.Ct. 2017.

from his teaching position. He sought injunctive relief, back pay and damages. The Court held that the claim for injunctive relief was not barred by the Eleventh Amendment under the doctrine of *Ex parte Young* and subsequent cases. *Id.* 396 F.2d at 732–734. However, so far as the claim for back pay and damages was concerned, the Court held that plaintiff could only recover of the defendants individually, noting that,

> Our holding is not to be interpreted to mean that the complaint states a claim for relief against the College or the State of Arkansas. *Id.* 396 F.2d at 734.

In concluding that plaintiffs' claim for damages against defendants in their representative capacities as state officials is in effect a suit against the State of Maine of which a federal court does not have jurisdiction, the Court is aware that in several recent welfare cases other federal courts have awarded damages— to date, only in the form of retroactive payments of benefits wrongfully withheld. *See* Gaddis v. Wyman, 304 F.Supp. 717 (S.D.N.Y.1969) (3-judge court); Damico v. California, Nos. 46538 & 48462 (N.D.Cal. Sept. 12, 1969) (3-judge court); Cooly v. Juras, Civ. No. 67–662 (D.Or. July 14, 1969) (3-judge court); Machado v. Hackney, 299 F.Supp. 644, 646 (W.D.Tex. 1969) (3-judge court) (retroactive benefits limited to named plaintiffs); Thompson v. Shapiro, 270 F.Supp. 331, 338 (D.Conn. 1967) (3-judge court), aff'd 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). *But see* Robinson v. Hackney, 307 F.Supp. 1249 (S.D.Tex. June 17, 1969) (3-judge court); Williams v. Dandridge, 297 F. Supp. 450, 459 (D.Md. 1968) (3-judge court), appeal docketed 396 U.S. 811, 24 L.Ed.2d 64, May 19, 1969; Robinson v. Washington, 302 F.Supp. 842, 844 (D.D. C. 1969); Doe v. Shapiro, 302 F.Supp. 761, 768 (D.Conn. 1969); Solman v. Shapiro, 300 F.Supp. 409, 416 (D.Conn. 1969), appeal docketed 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5, June 9, 1969. It is not easy to reconcile the cases which have awarded retroactive payments with the present ruling. It appears, however, that the questions dealt with in this opinion were not raised in those cases, either by the parties or by the Court.[12]

The Court holds that insofar as plaintiffs seek to recover damages of defendants in their representative capacities as officers of the State of Maine, their suit must be dismissed for want of jurisdiction, both because it does not come within the purview of Section 1983 and because it falls within the inhibition of the Eleventh Amendment.

### III

Plaintiffs finally urge upon the Court the so-called "Fair Hearing" regulations promulgated by the United States Department of Health, Education and Welfare and adopted by the State of Maine during the pendency of this litigation,[13] as authority for an award of retroactive payments here. This contention does not require extended discussion. The "Fair Hearing" regula-

---

12. Only one of the cited cases, Thompson v. Shapiro, discusses at all the authority for an award of damages. In a footnote, the Court cites Ex parte Young, *supra*, Department of Employment v. United States, 385 U.S. 355, 358, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966), and Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), for the proposition that the Eleventh Amendment is no barrier to awarding money damages. 270 F. Supp. at 338, n. 5. The basis of this Court's conclusion that Ex parte Young does not support such an award has been set forth above. As for Department of Employment v. United States, it seems clear that the Court held only that the Eleventh Amendment affords a state no immunity to a suit by the United States. 385 U.S. at 358, 87 S.Ct. 464. *See* Monaco v. Mississippi, 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282 (1934). Sherbert v. Verner presented no Eleventh Amendment problem. It should also be noted that Judge Clarie specifically dissented from this aspect of Thompson. 270 F.Supp. at 341. The Supreme Court did not consider the problem. 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600.

13. See note 5, *supra*.

tions provide for an award of retroactive benefits if, as a result of an administrative hearing, it is found that a public assistance claimant was wrongfully refused payments. Plainly, the regulations in question were designed to furnish an administrative remedy for those who, like plaintiffs, have been wrongfully denied public assistance grants. They do not purport to, nor could they effectively, afford the basis for an award of retroactive benefits by this Court. *Cf.* Robinson v. Washington, *supra;* Doe v. Shapiro, *supra;* Solman v. Shapiro, *supra.* The problem is not, as plaintiffs seem to suggest, whether one who has not exhausted an available state administrative remedy can establish a claim under Section 1983.[14] The question here is whether the state administrative remedy can itself provide a toehold for a federal court suit. Clearly, it cannot.

\*    \*    \*

Judgment will be entered for the defendants against the plaintiffs dismissing plaintiffs' claims for damages, with prejudice and without costs.

It is so ordered.

---

14. That exhaustion of state administrative remedies is not required before instituting a civil rights action was settled by Mc-Neese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963) and Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967).