**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| SHANE MCGUIRE ON BEHALF OF COLBY NEIDIG, | : | No. 26 WAP 2021 |
| | : | |
| | : | Appeal from the Order of the |
| Appellant | : | Commonwealth Court entered March 10, |
| | : | 2021 at No. 141 CD 2020, affirming the |
| | : | Order of the Court of Common Pleas of |
| v. | : | Allegheny County entered January 3, |
| | : | 2020 at No. GD-17-009635. |
| | : | |
| CITY OF PITTSBURGH, | : | ARGUED: April 13, 2022 |
| | : | |
| Appellee | : | |

**OPINION**

**JUSTICE WECHT**                                        **DECIDED: NOVEMBER 23, 2022**

This case involves a dispute about whether the City of Pittsburgh has a statutory duty to indemnify one of its police officers for a judgment entered against him in a federal civil rights lawsuit. We reject the argument that a federal jury's finding that a police officer acted "under color of state law" for purposes of Section 1983[1] necessarily constitutes a "judicial determination" that he also acted within the "scope of his office or duties" for purposes of the Political Subdivision Tort Claims Act.[2] Thus, we affirm.

In late 2012, 16-year-old Shane McGuire and a group of his friends smashed pumpkins and stacked bricks on the doorstep of a home in McGuire's neighborhood. The teens were still on the property when the homeowner—City of Pittsburgh Police Officer

---

[1]     42 U.S.C. § 1983.

[2]     42 Pa.C.S. §§ 8541-8564.

Colby Neidig—arrived home with his wife and children. McGuire watched the family's reaction to the vandalism and then banged on the front door and ran away, accidently tripping over his own brick boobytrap in the process.

Neidig heard the commotion, saw McGuire running, and gave chase. After a half-mile pursuit, Neidig caught McGuire, knocked him to the ground, and punched him in the face. Neidig was not wearing his police uniform at the time, nor did he identify himself as a police officer. Neidig called 911 and restrained McGuire until Officer David Blatt, an on-duty City of Pittsburgh police officer, arrived.

Two years later, McGuire filed a federal lawsuit against Neidig, Blatt, and the City of Pittsburgh, asserting excessive use of force in violation of 42 U.S.C. § 1983[3] and state law assault and battery claims. Blatt and the City were dismissed from the case at the summary judgment stage, and the claims against Neidig proceeded to a jury trial. Ultimately, the jury returned a verdict in McGuire's favor, finding that Neidig used unreasonable force against McGuire while acting under color of state law under Section 1983, and that Neidig was liable for McGuire's assault and battery claims as well. The jury awarded McGuire damages for all three claims. After molding the jury's verdict into a single award and adding attorney's fees to that amount, the court entered judgment against Neidig for $235,575.

Neidig did not seek indemnification from the City of Pittsburgh. Instead, he assigned to McGuire his right to sue the City for indemnification either under the Political

---

[3] Section 1983 is a federal statute that allows plaintiffs to sue government entities and employees for constitutional and other civil rights violations. 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]").

Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S. §§ 8541-8564, or under any other legal theory.[4]  McGuire then sued the City in the Allegheny County Court of Common Pleas ("the trial court"), seeking a declaratory judgment that the City was statutorily obligated to indemnify Neidig under Subsection 8548(a) of the PSTCA.[5]  The trial court held a jury trial in August 2019 and the jury returned a verdict in favor of the City.  The jury concluded that Neidig was not acting within the scope of his duties when he assaulted McGuire, meaning that the City was not required to indemnify Neidig under the PSTCA.[6]

McGuire then appealed to the Commonwealth Court, which affirmed in a published decision.  On appeal, McGuire claimed that the City was collaterally estopped from arguing that Neidig was not acting within the scope of his office or duties as a City of Pittsburgh police officer when he used force against McGuire because the federal jury

---

[4]     *See* Assignment of Claims, 8/12/2017, at 2 (R.R. 11a).

[5]     Subsection 8548(a) of the PSTCA provides:

> **(a) Indemnity by local agency generally.—**When an action is brought against an employee of a local agency for damages on account of an injury to a person or property, and he has given timely prior written notice to the local agency, and it is judicially determined that an act of the employee caused the injury and such act was, or that the employee in good faith reasonably believed that such act was, within the scope of his office or duties, the local agency shall indemnify the employee for the payment of any judgment on the suit.

42 Pa.C.S. § 8548(a); *see also* 42 Pa.C.S. § 8501 (defining "judicial determination" to mean "[a]ny determination by a court of competent jurisdiction including any settlement approved by such court").

[6]     Had the jury concluded that Neidig was acting within the scope of his duties, it then would have considered whether Neidig's conduct amounted to "willful misconduct," a finding that would negate the City's duty to indemnify.  Given the jury's verdict, however, it did not reach the willful-misconduct question.  *See* 42 Pa.C.S. § 8550 (providing that Section 8548's indemnity provision does not apply "[i]n any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct").

had already concluded that Neidig assaulted McGuire while acting under color of state law. In McGuire's view, "color of state law" (for purposes of Section 1983) is synonymous with the "scope of office or duties" (as used in the PSTCA), and the City therefore was estopped from relitigating the issue in state court.

The Commonwealth Court explained that the doctrine of collateral estoppel precludes a party from relitigating an issue when:

> the issue is the same as in the prior litigation; the prior action resulted in a final judgment on the merits; the party against whom the doctrine is asserted was a party or in privity with a party to the prior action; and the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior action. In some renditions, courts add a fifth element, namely, that resolution of the issue in the prior proceeding was essential to the judgment.[7]

The Commonwealth Court began and ended its collateral estoppel analysis with the first element of the above test. The court held that "the determination in the instant Federal Court Action that Neidig acted under color of law does not dictate that Neidig acted within the scope of his employment" for purposes of the PSTCA.[8] In support of that conclusion, the Commonwealth Court cited federal precedent holding that "a determination that [a police officer] acted 'within the scope of his office or employment' does not inevitably flow from a concession that he acted 'under color of' Pennsylvania law."[9] Thus, the court found that the first element of collateral estoppel was not met, since

---

[7] *McGuire on behalf of Neidig v. City of Pittsburgh*, 250 A.3d 516, 531 (Pa. Cmwlth. 2021) (*quoting In re Coatesville Area School District*, 244 A.3d 373, 379 (Pa. 2021) (citations omitted)).

[8] *Id.* at 535.

[9] *Zion v. Nassan*, 283 F.R.D. 247, 267-68 (W.D. Pa. 2012); *see also id.* at 267 ("This court has already recognized that a police officer may sometimes act both 'under color of state law' and beyond the scope of his or her employment.").

the issue in the state court litigation was different from the issue in the federal case. As a result, the Commonwealth Court affirmed the trial court's judgment.[10]

McGuire then petitioned for allowance of appeal arguing, among other things, that a federal jury's finding that a police officer acted "under color of state law" for purposes of Section 1983 constitutes a "judicial determination" that the officer acted within the "scope of his office or duties" under the PSTCA. While McGuire no longer argues in terms of collateral estoppel, the issue before us, in its simplest terms, remains whether the PSTCA requires the City to indemnify Neidig for the federal judgment entered against him. McGuire continues to argue that the "color of state law" concept embodied in Section 1983 is synonymous with the phrase "scope of office or duties" as used in the PSTCA. Thus, McGuire claims that the judgment entered against Neidig in the federal action constitutes a judicial determination that Neidig acted within the scope of his office or duties for purposes of the PSTCA.[11] According to McGuire, this means that the City was required to indemnify Neidig for the federal judgment, and that the state court was wrong to resubmit to a jury a question that had already been answered in the federal litigation.

The City disagrees with McGuire. It contends that color of state law (under Section 1983) and scope of office or duties (under the PSTCA) are two entirely different concepts, with the federal jury finding only the former and not the latter.[12] The City therefore argues that the trial court correctly held a jury trial on the unanswered question of whether Neidig

---

[10]    McGuire raised other challenges in the Commonwealth Court that are no longer germane to this appeal, including evidentiary, standing, and jury-instruction issues.

[11]    Brief for McGuire at 12 ("When the federal jury determined that Neidig injured McGuire while acting under color of state law, it simultaneously determined that he injured McGuire within his 'scope of office or duties', a legal phrase synonymous with having acted under color of state law.").

[12]    Brief for the City at 8 (calling the two terms "different in name and definition").

acted within the scope of his office or duties for purposes of the PSTCA, with the jury concluding that he did not.

We begin our analysis with 42 U.S.C. § 1983, which creates a right of action against anyone who violates the constitutional or federal statutory rights of another while acting under "color of state law."[13] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[14] Thus, "under color of state law" essentially means under "pretense" of state law, since a public employee who misuses or abuses the authority given to him by the state still acts under color of state law while clothed with official state authority.[15]

Subsection 8548(a) of the PSTCA, by contrast, does not turn on those same considerations. The critical inquiry under the PSTCA is whether the public employee's actions were "within the scope of his office or duties," or whether he "in good faith

---

[13]     Though Section 1983 does not use the phrase "color of state law," it has become a kind of shorthand in the legal lexicon for the more unwieldy language that Congress used. 42 U.S.C. § 1983 (allowing suits against anyone who deprives another of a federally protected right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia"); *see, e.g.*, *Burrell v. City of Mattoon*, 378 F.3d 642, 647 (7th Cir. 2004) ("The two key elements establishing a violation of § 1983 are (1) a deprivation of a federally guaranteed right, (2) perpetrated under color of state law.").

[14]     *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

[15]     *Id.* at 49-50 ("It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State."); *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) ("More simply, '[u]nder 'color' of law means under 'pretense' of law.'" (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)).

reasonably believed" that they were.[16]  While decisions interpreting Subsection 8548(a) are not plentiful, our precedent has interpreted comparable language in different contexts. Pennsylvania's sovereign immunity statute, for example, turns on whether a public employee was acting within "the scope of their duties."[17]  This Court has interpreted that language as embracing the common law "scope of employment" inquiry, which we analyze using the factors set forth in the Restatement (Second) of Agency.[18]  Under that test, an employee's conduct falls within their scope of their employment if:

(a) it is of the kind he is employed to perform;
(b) it occurs substantially within the authorized time and space limits;
(c) it is actuated, at least in part, by a purpose to serve the master, and
(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

Restatement (Second) of Agency § 228 (1958).  The Restatement also makes clear that the "[c]onduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master."  *Id.*, § 228(2).

Given that the PSTCA "was intended to provide for indemnification for any judgment that may be rendered against an employee while acting within the scope of his

---

[16]    42 Pa.C.S. § 8548(a) ("When an action is brought against an employee of a local agency for damages . . . and it is judicially determined that an act of the employee caused the injury and such act was, or that the employee in good faith reasonably believed that such act was, within the scope of his office or duties, the local agency shall indemnify the employee [.]").

[17]    1 Pa.C.S. § 2310 ("[T]he Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.").

[18]    *Justice v. Lombardo*, 208 A.3d 1057, 1068 (Pa. 2019) ("[W]e rely on this Court's vicarious liability cases and on the language of the Restatement itself in analyzing whether Trooper Lombardo acted within the scope of employment[.]").

employment,"[19] we believe that the Restatement's scope-of-employment test should govern the inquiry under the PSTCA just as it does under the sovereign immunity statute. We acknowledge that the PSTCA refers to an employee's "scope of office or duties" while the sovereign immunity statute uses the more streamlined "scope of duties." McGuire argues that this difference in language is significant, and he suggests that one necessarily acts within the scope of his or her "office" whenever acting "under color of state law" for purposes of Section 1983. Thus, McGuire contends that the mere inclusion of the word "office" in the PSTCA makes it coterminous with Section 1983.

While it is true that we must attempt to give meaning to every word of a statute,[20] it is far from clear what the General Assembly meant when it used the phrase "scope of office or duties" in the PSTCA rather than simply "scope of duties." A person's "office"—in the sense that the General Assembly clearly used the word here—simply means his or her "position."[21] But there is very little if any difference between the scope of a person's position and the scope of his or her duties (or the scope of their "employment," as it is phrased in the Restatement). McGuire seems to believe that every public employee in the Commonwealth has both a "scope of office" and a "scope of duties," and that one's scope of office includes only conduct that would also be considered "under color of state

---

[19]    *Wiehagen v. Borough of N. Braddock*, 594 A.2d 303, 305 (Pa. 1991) (emphasis omitted).

[20]    *Allegheny Cty. Sportsmen's League v. Rendell*, 860 A.2d 10, 19 (Pa. 2004) ("Because the legislature is presumed to have intended to avoid mere surplusage, every word, sentence, and provision of a statute must be given effect.") (citation omitted).

[21]    *Office*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A position of duty, trust, or authority, esp. one conferred by a governmental authority for a public purpose[.]").

law" for purposes of Section 1983.[22]  We think a more likely explanation is that the legislature assumed that "scope of office" and "scope of duties" mean essentially the same thing, but that some public employees (like elected officials) have a scope of "office" while others (like police officers) have a scope of "duties."

Perhaps more likely still is that the inclusion of the word "office" here merely reflects the sort of synonym-heavy, belt-and-suspenders draftsmanship to which legislatures sometimes are prone.[23]  Along these lines, it bears emphasizing that the phrase "scope of office" appears in other state and federal statutes, yet we cannot find a single example of either a court or a legislature distinguishing an employee's "scope of office" from his or her "scope of duties," or giving "scope of office" a broad interpretation of the sort that McGuire champions.[24]  We therefore conclude that the common law "scope of employment" test, as set forth in the Restatement, should govern under the PSTCA, just as it does under the sovereign immunity statute.

The only remaining question, then, is whether "scope of office or duties," as we have defined it, is synonymous with "under color of state law," as that phrase is used in

---

[22]    Reply Brief for McGuire at 14 (asking this Court to "interpret the legislature's inclusion of the word 'office' as capturing actions which are taken 'under color of law,' even though those actions may fall outside the employee's 'scope of duties'").

[23]    *See*, *e.g.*, S.D. CODIFIED LAWS § 39-1-9 (referring to one's "scope of office, agency, or employment").

[24]    *But see Heard v. Blakney*, 415 So.2d 487, 489 (La. Ct. App. 1982) (interpreting "scope of his office or employment" to mean "scope and course of employment"); MINN. STAT. § 3.732 ("'Scope of office or employment' means that the employee was acting on behalf of the state in the performance of duties or tasks lawfully assigned by competent authority."); 28 U.S.C. § 2671 ("'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States or a member of the National Guard as defined in section 101(3) of title 32, means acting in line of duty."); MASS. GEN. LAWS ch. 258 § 1 (defining "[a]cting within the scope of his office or employment" to mean "acting in the performance of any lawfully ordered military duty, in the case of an officer or soldier of the military forces of the commonwealth").

42 U.S.C. § 1983. We agree with the Commonwealth Court that it is not. As explained above, the "color of state law" inquiry turns on whether the public employee purported to exercise official state authority, not whether he or she was authorized—or reasonably believed himself or herself to be authorized—to act in a certain way. This means that "a police officer may sometimes act both 'under color of state law' and beyond the scope of his or her employment."[25] Thus, indemnity in an excessive force case like this one might turn on factors that largely are irrelevant under Section 1983's "color of state law" inquiry, such as whether the officer reasonably believed that his conduct was authorized by his employer, or whether he was motivated subjectively by a desire to serve his employer.[26]

Other courts that have considered whether the common law concept of "scope of employment" is synonymous with Section 1983's "color of state law" inquiry seemingly all have concluded that it is not.[27] Indeed, McGuire does not cite (and we cannot find) any

---

[25]     *Zion*, 283 F.R.D. at 267.

[26]     *Compare Anderson v. Moussa*, 250 F. Supp. 3d 344, 350 (N.D. Ill. 2017) ("[Section] 1983's color of law requirement concerns whether a police officer wielded—with or without authorization—state authority[.]"), *with* Restatement (Second) of Agency § 228 (1958) (conduct falls within the scope of one's employment only when it is "of the kind he is employed to perform," it "occurs substantially within the authorized time and space limits," and it "is actuated, at least in part, by a purpose to serve the master").

[27]     *See, e.g., Anderson*, 250 F. Supp. 3d at 350 (holding that the phrase "'under color of' state law under § 1983 is not coextensive with 'scope of employment'" for purposes of Illinois' governmental immunity statute); *Zion*, 283 F.R.D. at 267 (holding that the actions of a state official may constitute state action "even when they exceed the limits of the official's authority"); *Shrader v. Emps. Mut. Cas. Co.*, 907 So.2d 1026, 1033 (Ala. 2005) ("The meaning of the phrase 'under color of law' is broader than the phrase 'within the line and scope of employment.'" (emphasis omitted)); *Wilson v. City of Chicago*, 120 F.3d 681, 684 (7th Cir. 1997) (stating that whether a police officer acted within the scope of his employment and whether he acted under color of state law are "closely related, although not identical" issues); *Coleman v. Smith*, 814 F.2d 1142, 1149 (7th Cir. 1987) ("We do not confuse the 'under color of state law' element of section 1983 with the 'scope of employment' requirement of the indemnification statute. A finding of the first element is not necessarily a finding as to the latter."); *Cameron v. City of Milwaukee*, 307 N.W.2d 164, 169 (Wis. 1981) ("We do not perceive a substantial equation between conduct which

court that has held otherwise. Put simply, the "color of state law" and "scope of employment" inquiries "do not involve precisely parallel considerations"[28] because Section 1983 "imposes liability on state officials for conduct taken within, as well as without, the scope of their authority."[29]

Because we hold that "color of state law" is not synonymous with "scope of office or duties," we also find that McGuire's remaining issues are moot. In his second and third issues, McGuire claims that the trial court erred in submitting to a jury the question of whether Neidig was acting within the scope of his office or duties when he assaulted McGuire. According to McGuire, the only question in the state declaratory judgment action was whether it had been "judicially determined" *in the federal case* that Neidig acted in the scope of his office or duties—which McGuire argues is a pure question of law that the court should have answered on its own.[30] In contrast, the City contends that, because the question of whether Neidig's conduct fell within the scope of his office or

is within the scope of a municipal or state employee's employment and conduct which may be termed 'under color of law.'").

28    *Maimaron v. Commonwealth*, 865 N.E.2d 1098, 1107 (Mass. 2007) (holding that the color of state law and scope of employment inquiries "do not involve precisely parallel considerations" because the "scope of employment issue bespeaks a narrower inquiry").

29    *Shrader*, 907 So.2d at 1033 (cleaned up) (quoting *Westberry v. Fisher*, 309 F. Supp. 12, 15 (D. Me. 1970)).

30    Brief for McGuire at 26 ("Because the issue of whether Neidig acted in the 'scope of his office or duties' was required to be determined in the Federal Litigation, the only issue to be decided in the Declaratory Judgment Action was whether it was, 'judicially determined' in that Litigation that Neidig acted in the scope of his office or duties."); *id.* at 27 ("The issue in a declaratory judgment action for indemnification under the PSTCA as to whether the prerequisites for indemnification were 'judicially determined' in the underlying damages action was a pure question of law for the court and not a question of fact for the jury.").

duties was not decided in the federal action, it was ripe for litigation in the state declaratory judgment action.

"It has long been the rule in Pennsylvania that this Court will not decide moot questions" where there exists no actual case or controversy.[31] A question is moot unless it involves "a legal controversy that is real and not hypothetical" and it "affects an individual in a concrete manner so as to provide the factual predicate for a reasoned adjudication."[32]

Here, it is a moot question whether the trial court erred in submitting to a jury the issue of whether Neidig injured McGuire "within the scope of his office or duties" because the answer to that question cannot possibly affect the outcome of this case, making it an entirely hypothetical controversy.[33] Even if McGuire is correct that "whether Neidig acted in the 'scope of his office or duties' was required to be determined in the Federal Litigation,"[34] and that the only question for the state court was whether it had been, then the judgment still should be affirmed because, as we have explained above, the federal jury simply did not consider whether Neidig acted within the scope of his office or duties. In other words, McGuire's second and third issues depend upon us agreeing with the proposition that "color of state law" and "scope of office or duties" mean the same thing—

---

[31] *Meyer v. Strouse*, 221 A.2d 191, 192 (Pa. 1966) (citation omitted).

[32] *Dow Chem. Co. v. EPA*, 605 F.2d 673, 678 (3d Cir. 1979); *see also Mistich v. Pa. Bd. of Prob. & Parole*, 863 A.2d 116, 119 (Pa. Cmwlth. 2004) ("A controversy must continue through all stages of judicial proceedings, trial and appellate, and the parties must continue to have a 'personal stake in the outcome' of the lawsuit." (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990)).

[33] *See Tur v. YouTube, Inc.*, 562 F.3d 1212, 1214 (9th Cir. 2009) (*per curiam*) ("[A]n issue is moot when deciding it would have no effect within the confines of the case itself.").

[34] Brief for McGuire at 26.

which, as we have explained, we do not. Thus, we conclude that any substantive analysis of these issues would be academic and purely advisory.[35]

In summary, we reject the argument that a federal jury's finding that a police officer acted "under color of state law" for purposes of Section 1983 constitutes a "judicial determination" that he acted within the "scope of his office or duties" for purposes of the PSTCA. Given that conclusion, McGuire cannot prevail on the merits of this appeal even if he were to convince us that the trial court erred in allowing a jury to consider anew whether Neidig acted within "the scope of his office or duties" when he used force against McGuire. Thus, we decline to consider McGuire's subsidiary issues, and we affirm.

Chief Justice Todd and Justices Dougherty and Brobson join the opinion.

Justice Donohue files a concurring opinion in which Justice Mundy joins.

The Late Chief Justice Baer did not participate in the decision of this matter.

---

[35] *Stuckley v. Zoning Hearing Bd. of Newtown Twp.*, 79 A.3d 510, 516 (Pa. 2013) ("Where the issues in a case are moot, any opinion issued would be merely advisory and, therefore, inappropriate.").